Docket No. 107323.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
FATIMA GIVENS, Appellee.

*Opinion filed April 15, 2010.–Modified upon denial of rehearing
May 24, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Following a bench trial in the circuit court of Cook County,
defendant, Fatima Givens, was convicted of possession of a controlled
substance (720 ILCS 570/402(c) (West 2004)) and sentenced to 12
months' probation. On appeal to the appellate court, defendant raised
several contentions, including that her trial counsel was ineffective in
not litigating a motion to suppress evidence that would have
challenged the voluntariness of a consent to search. 384 Ill. App. 3d
101, 102, 105. The appellate court, however, reversed and remanded
the cause for a hearing on the basis that counsel was ineffective in not
litigating a motion to suppress on the ground that the person

consenting to the search in question lacked the authority to consent. 384 Ill. App. 3d at 112-15. This ground was raised *sua sponte* by the appellate court and not argued or briefed by either party in the trial or appellate courts. We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315. Before this court, the State argues, among other things, that the appellate court erred when it *sua sponte* addressed an issue not raised by the parties. Defendant in turn raises a number of issues in her cross-appeal in this court. See 155 Ill. 2d R. 318(a). For the reasons that follow, we vacate the judgment of the appellate court and reinstate defendant's conviction.

## BACKGROUND

The record reveals that in April 2005, defendant and her codefendant, George Loving, were each charged by information with one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2004)). In July 2005, defendant filed a motion to quash arrest and suppress evidence (motion to suppress), alleging generally that her arrest was made without the authority of a valid search or arrest warrant. Pursuant to a plea agreement with the State, codefendant Loving pled guilty in November 2005, to the lesser charge of possession of a controlled substance. Two months later, the trial court allowed defendant to waive a jury trial and to withdraw her motion to suppress; the case then immediately proceeded to a bench trial on the intent to deliver charge brought against defendant.

The evidence at trial established that Chicago police officers Robert Graves, Rafael Bonafazzi, and Stephen Lotts received a tip from a confidential informant that illegal drugs were being sold out of apartment number 366 at 2804 N. Leavitt in Chicago. The informant said that defendant and her boyfriend were in the apartment and were the ones selling the drugs. The apartment was rented by Teri Mathews, a friend of defendant.

Officer Graves testified that around 11:30 a.m., on April 9, 2005, he and the other two officers met Mathews outside the building located at 2804 N. Leavitt, explained their reason for being there, and Mathews then signed a consent form that allowed police to enter the apartment. Officer Graves asked Mathews if anyone was in the

apartment in question, and Mathews told the officer that defendant and her boyfriend were upstairs in the apartment. The officers then went inside, approached the sole bedroom and found defendant and her boyfriend in bed. In plain view, the officers observed a clear plastic bag on top of a night stand near the bed within arms reach of the couple. Inside the clear plastic bag were 21 smaller baggies, each containing crack cocaine. There was also a razor blade on the night stand next to the bed. Police also found $355 cash. Graves placed defendant and Loving in custody and took them to the police station.

On cross-examination, Officer Graves testified that he did not observe any prospective drug buyers come to the area in the time he was outside with Mathews before entering the apartment. When defense counsel asked if the informant had given reliable information in the past, the State objected; but the trial court overruled the objection. Graves answered that indeed the informant had provided reliable information before. Graves further testified on cross-examination that although he was present with the other officers, it was actually Officer Bonafazzi who spoke with Mathews on the sidewalk outside the apartment. Graves also noted that Mathews did not actually open the apartment for the officers. Rather, the officers received the key from her, and she stayed outside. When the officers entered the bedroom, defendant and Loving made no effort to hide the contraband because they were still "half asleep."

The parties then stipulated to the chain of custody of the items seized from the apartment. They also stipulated that the State's forensic chemist tested the content of 14 of the 21 bags seized, which amounted to 1.2 grams, and that the substance tested positive for the presence of cocaine. The total estimated weight of the content of all 21 bags was 1.8 grams.

After the State rested its case, defendant moved for a directed verdict. The trial court found that the State had introduced sufficient evidence to support the lesser-included offense of possession of a controlled substance, but granted defendant's motion for a directed verdict with respect to the greater charge of possession with the intent to deliver.

Crystal Giles was then called to testify on behalf of defendant. Giles stated that she lived in the same neighborhood where Mathews' apartment was located and was a friend of both defendant and Loving.

Giles also stated that Mathews was a friend of Giles' mother. On the day in question, Giles was walking about two buildings from 2804 N. Leavitt when she saw Mathews being held up against a wall by police officers who were going through her pockets. An officer had Mathews' keys in his hand, and then the officers and Mathews all went upstairs. Giles did not see Mathews sign any paper work during the time that Giles watched, which was about 20 minutes.

Teri Mathews testified that police met her outside of her apartment, took the keys from her and then went upstairs. She was not inside the apartment when police conducted the search. At some point, they called for her to come upstairs, and it was then that she signed the consent to search form. When asked if she signed it voluntarily, she replied, "After he told me I would lose my house, yeah." On cross-examination, Mathews testified that aside from herself, the only other persons in her apartment were defendant and Loving. She also noted that the drugs found did not belong to her and that she did not know how they got there.

Defendant testified that she stayed overnight in Mathews' apartment with her fiance, Loving, the night before the search and her arrest. When police entered Mathews' apartment, defendant was in the bedroom, but was not asleep or lying down. Defendant claimed that as she opened the bedroom door, three officers rushed in and handcuffed her and Loving. Police then had the two sit on the couch in the living room while police searched the bedroom. At one point, the police officers went away with Mathews, and when the officers came back, they had "a piece of paper saying they had consent to search."

On cross-examination, defendant acknowledged that there is a night stand located in Mathews' bedroom, but claimed that it was attached to a wall and not next to the bed. She denied that there were any drugs on the night stand.

Officer Stephen Lotts was then called as a witness on behalf of the State. He testified that he went to 2804 N. Leavitt and met Mathews outside the building with Officers Bonafazzi and Graves. The officers determined that Mathews was the leaseholder of apartment 366. Lotts noted that after the officers explained to Mathews why they were there, she signed a consent to search form that allowed Lotts and the other officers to enter the apartment and search it. The form was

signed outside on the sidewalk in front of the building in Lotts' presence, and at no time did the officers have Mathews "up against a wall." Lotts also stated that no threats of any kind were made by himself or his fellow officers to induce Mathews to sign the consent form. It was Officer Bonafazzi that received the keys for the apartment from Mathews. The three officers then went upstairs to search the apartment while Mathews remained outside. After refreshing his recollection with a review of the consent to search form signed by Mathews and the arrest report of defendant's arrest, Officer Lotts testified that Mathews signed the consent to search form at 11:10 a.m. and defendant was placed under arrest at 11:30 a.m.

Lotts stated on cross-examination that Mathews voluntarily gave up her keys to the officers to open the door and enter her apartment. Lotts also noted that the officers were inside the apartment for at least 10 or 15 minutes before an arrest was made.

In his closing argument, defense counsel began by arguing that defendant was not proven guilty beyond a reasonable doubt because there was nothing to connect defendant to the cocaine that police found in the bedroom. Defense counsel stated as follows:

> "Judge, there's nothing here that ties [defendant] to this cocaine that the police found. She's not holding it. She's not making any statement saying that's mine, give it back. She's not selling it. She's not doing anything to protect it or doing anything to show that she possessed it.
>
> Now, I think the court can take judicial notice that she's the remaining defendant in this case. And *** there's nothing here showing that she was possessing it. *** [T]his is mere presence judge."

Defense counsel then turned to the circumstances surrounding the consent to search and argued as follows:

> "Also, there's been some question raised about a search, the consent to search, Judge, and the unbelievability of Miss Mathews simply giving up her keys for police to go into the house, Judge, there's also been some unimpeached testimony from Crystal Giles that she saw Miss Mathews being muscled or up against a wall there while police were aggressively interviewing her.

-5-

Judge, that raises a question about consent that Miss Mathews may or may not have given regarding this case.

Judge, you also have testimony from Teri Mathews that she was told that if she didn't sign it, she would lose her apartment, and that's what led her to finally put pen to paper on this."

In rebuttal, the prosecutor first argued that defendant had constructive possession over the drugs based on the circumstances of defendant being present in the room in close proximity to 21 bags of cocaine found on the night stand in plain view. The prosecutor then turned to the credibility of the witnesses with respect to the question defendant raised about the voluntariness of Mathews' consent to search. Specifically, the prosecutor noted:

"As far as Miss Giles goes, counsel mentioned unimpeached testimony. Miss Giles' testimony was clearly impeached by Officer Lotts. He told you that no one threatened Miss Mathews. He told you that no one was physically–was physical with Miss Mathews.

Your Honor, and as far as Miss Mathews herself, the Court needs to take into consideration the demeanor of that witness who testified before this Court and the bias of Miss Giles and the bias of this defendant who testified before this Court. They all have reasons to be less than truthful with this Court about what happened on that particular day, 9, April 2005.

This is obviously an issue of credibility, and the State has given the Court two credible witnesses."

The trial court found defendant guilty of possession of a controlled substance, having already directed a verdict in favor of defendant on possession with intent to deliver. The trial court resolved the credibility issues with respect to the consent to search in favor of the State and found defendant guilty, stating that "[b]ased on the evidence that was presented, considering only the proper evidence that was presented, judging the credibility of the witnesses ***, there will be a finding of guilty."

On appeal to the appellate court, defendant raised four issues: (1) whether her trial counsel was ineffective for withdrawing her motion

to suppress where the evidence presented at trial cast doubt on the voluntariness of Mathews' consent to allow police to enter and search her apartment; (2) whether defendant was proved guilty beyond a reasonable doubt; (3) whether the State established a sufficient chain of custody with respect to the recovered evidence; and (4) whether the trial court abused its discretion in refusing defendant's request for first-offender probation under section 410 of the Illinois Controlled Substances Act (720 ILCS 570/410 (West 2004)).[1] The appellate court, however, did not resolve the case based upon any of the four issues raised by defendant. Instead, the appellate court found that Mathews only had a right to give her consent to allow police to enter into the common area of the apartment, but she did not have authority to consent to the police entry of her bedroom that was occupied by defendant as an overnight guest. 384 Ill. App. 3d at 112. The appellate court therefore found that trial counsel was ineffective in not challenging the search on the basis that Mathews lacked authority to consent. Accordingly, the appellate court reversed defendant's conviction and remanded the cause with directions to hold a hearing on a motion to quash arrest and suppress evidence and, if necessary, after the hearing on the motion, hold a new trial. 384 Ill. App. 3d at 115.

## ANALYSIS

On appeal to this court, the State initially argues that the appellate court deprived the State of a fair proceeding when it reversed defendant's conviction on the basis that a motion to suppress probably would have been granted had trial counsel litigated the question of whether Mathews lacked authority to consent to the search of her

---

[1]We note that defendant again raises the first and second issues in her cross-appeal before this court. Additionally, defendant now concedes that the fourth issue, which raises a sentencing argument, is moot because defendant has completely served her sentence. See *People v. Campbell*, 224 Ill. 2d 80, 83 (2006). Furthermore, defendant urges that if this court reverses the appellate court judgment after considering the issues raised by this appeal, this court should remand the cause to the appellate court for consideration of the third issue raised in the appellate court involving the chain of custody, which the appellate court did not address.

own bedroom because of defendant's status as an overnight guest–a theory never raised by defendant or addressed by the parties in their appellate briefs. We agree with the State.

Illinois law is well settled that other than for assessing subject matter jurisdiction, "a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment." (Emphasis added.) *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978); see also *Parks v. McWhorter*, 106 Ill. 2d 181, 184 (1985) (noting that except for jurisdictional grounds, a search of the record for unargued and unbriefed reasons to reverse a lower court's decision is improper); *People ex rel. Akin v. Southern Gem Co.*, 332 Ill. 370, 372 (1928) ("while this court will examine the record for the purpose of affirming a judgment it will not do so for the purpose of reversing it"). Moreover, in *Greenlaw v. United States*, 554 U.S. ___, ___, 171 L. Ed. 2d 399, 408, 128 S. Ct. 2559, 2564 (2008), the United States Supreme Court recently addressed the propriety of a reviewing court ruling upon issues raised *sua sponte*. The Court admonished:

> "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. [Citation.] But as a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief. [Citation.] As cogently explained:
>
>> '[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do ***.' [Citation.]" *Greenlaw*, 554 U.S. at ___, 171 L. Ed. 2d at 408, 128 S. Ct. at 2564.

-8-

Our appellate court in *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002), expressed a similar sentiment as follows:

> "While a reviewing court has the power to raise unbriefed issues pursuant to Supreme Court Rule 366(a)(5), we must refrain from doing so when it would have the effect of transforming this court's role from that of jurist to advocate. [Citation.] Were we to address these unbriefed issues, we would be forced to speculate as to the arguments that the parties might have presented had these issues been properly raised before this court. To engage in such speculation would only cause further injustice; thus we refrain from addressing these issues *sua sponte.*"

In the present case, appellate counsel did not argue that trial counsel was ineffective for not challenging Mathews' authority to consent to a search of her own bedroom based on defendant's status as an overnight guest. Instead, appellate counsel argued only that Mathews' consent was not voluntarily given based on the testimony of Mathews and Giles and the circumstances surrounding Mathews' signing of the consent form. Thus, the appellate court's raising of the authority-to-consent issue *sua sponte* was a violation of the well-established principles noted above.

Defendant argues that the case law noted above stands only for the proposition that a reviewing court should not *normally* decide on its own initiative an unbriefed issue. This is different, defendant asserts, than ruling that a reviewing court lacks the power to decide such issues. We agree with the general proposition that a reviewing court does not lack authority to address unbriefed issues and may do so in the appropriate case, *i.e.*, when a clear and obvious error exists in the trial court proceedings. We disagree, however, with the notion that the appellate court did not error in addressing the unbriefed issue in this case.

In support of her argument, defendant relies upon *Hux v. Raben*, 38 Ill. 2d 223 (1967). We do not find *Hux*, a civil case, to be availing to defendant's position under the circumstances presented here. *Hux* indicated that under Supreme Court Rules 341(e)(7) and 366(a)(5), a reviewing court may sometimes raise and consider unbriefed issues in order to provide "for a just result and for the maintenance of a sound and uniform body of precedent." *Hux*, 38 Ill. 2d at 225. These

-9-

concerns, however, are not implicated in the present case. Instead, we conclude that the appellate court stepped over the line from neutral jurist to that of an advocate for defendant to raise and rule on issues that were neither controlled by clear precedent nor dictated by an interest in a just result.

In the case before us, it would have been the burden of defendant to file a motion to suppress and to raise the grounds for the motion in the trial court prior to trial if she wanted to challenge Matthews' authority over the bedroom. See 725 ILCS 5/114–12 (West 2008). Whether defendant would have prevailed on such a motion would have been a mixed question of law and fact, with the trier of fact assessing and judging the credibility of the witnesses. *People v. Jones*, 215 Ill. 2d 261, 267-68 (2005); *People v. Lee*, 214 Ill. 2d 476, 483-84 (2005).Here, the issue raised *sua sponte* by the appellate court was whether counsel was ineffective in not filing a motion to suppress raising the authority of Matthews to consent to the search. We believe that under the cold record before us, it was within the province of defendant and his appellate counsel to raise or not raise any argument with respect to trial counsel's ineffectiveness, and in the absence of any such argument, it should have been presumed, without specifically addressing the merits, that the record would not have supported the argument had it been litigated below. The appellate court relied upon facts presented at trial, but such facts were not elicited with a view to the authority-to-consent theory. The State would certainly have been free to present evidence against the theory had it been raised. Conversely, defendant may have presented different evidence. In such a case, a reviewing court should not normally speculate about what would have been the result of the motion to suppress. See *People v. Conley*, 118 Ill. App. 3d 122, 131-32 (1983).

We also note that the issue identified *sua sponte* by the appellate court did not amount to obvious error controlled by clear precedent, and for that additional reason, the appellate court erred in addressing the issue. The appellate court first broached the subject of Mathews' possible lack of authority to consent to the search of her bedroom by surprising the State with a few questions about it during oral argument. The appellate court then filed an opinion that relied heavily upon *Minnesota v. Carter*, 525 U.S. 83, 142 L. Ed. 2d 373, 119 S. Ct. 469 (1998), and *Minnesota v. Olson*, 495 U.S. 91, 109 L. Ed. 2d

85, 110 S. Ct. 1684 (1990), both of which are cases where the Supreme Court held only that an overnight guest has a legitimate expectation of privacy in his host's home. The appellate court's opinion upbraided defendant's trial counsel for failing to consider these cases. Yet neither case involved a consent to search. More importantly, both cases contain language indicating that a host may consent to a search of her home, even though it may result in the disturbance of the guest and the guest's possessions. We would assume that would be just as true, if not more so, when the host's home is, as here, a single bedroom apartment and the host has not vacated the apartment, but rather is jointly occupying it. The appellate court managed to quote the key language from *Carter* and *Olson*, despite the fact that its applicability to the present case seems to have been lost on the appellate court:

> " ' "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone *but his host and those his host allows inside*." ' " (Emphasis added.) 384 Ill. App. 3d at 111, quoting *Carter*, 525 U.S. at 89, 142 L. Ed. 2d at 380, 119 S. Ct. at 473, quoting *Olson*, 495 U.S. at 98-99, 109 L. Ed. 2d at 94-95, 110 S. Ct. at 1689.

Notably, defendant's appellate counsel does not even feel comfortable enough with *Carter* and *Olson* to rely upon those cases to support her arguments on the merits of the authority-to-consent issue in her briefs before this court.

We also note that after the appellate court issued its opinion holding that Mathews lacked authority to consent to a search of her bedroom, the State filed a petition for rehearing that raised points and cited authority that legitimately called into question the correctness of the appellate court's holding. For example, citing *United States v. Matlock*, 415 U.S. 164, 171, 39 L. Ed. 2d 242, 249-50, 94 S. Ct. 988, 993 (1974), the State argued that a warrantless search of an apartment is justified if a third party who possesses common authority over the premises to be searched consents to that search. The State further argued that even if Mathews had relinquished her actual authority over the bedroom, it could not be disputed that she retained apparent authority to consent to the search of her entire apartment, including

her bedroom. *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 111 L. Ed. 2d 148, 161, 110 S. Ct. 2793, 2801 (1990) (Supreme Court held that even where the person granting consent to search does not actually have common authority over the premises, the fourth amendment is not infringed if that person has "apparent authority" over the premises, *i.e.*, if the person is someone police reasonably believe has authority to consent to a search). Nonetheless, the appellate court denied the State's petition for rehearing without any modification and without addressing the points raised and the authority cited by the State.

We believe that the better approach was followed by the appellate court in *Rodriguez*, where the court noted that even though a reviewing court has the power to raise unbriefed issues, it should refrain from doing so when it would have the effect of transforming the court's role from that of jurist to advocate. See *Rodriguez*, 336 Ill. App. 3d at 14. In *Rodriguez*, the court began its analysis by noting that it was compelled in the interest of justice to *sua sponte* address the trial court's "obvious error" in convicting defendant of four separate counts of first degree murder involving a single murder. See *Rodriguez*, 336 Ill. App. 3d at 12. It then cited an Illinois Supreme Court decision on point before vacating the three less serious convictions while letting the most serious conviction stand. *Rodriguez* then proceeded to note that after a thorough review of the record, it had found four additional issues that could have been raised to attack defendant's convictions for aggravated and reckless discharge of a firearm. The court refrained from addressing the four additional issues it had identified, however, because it determined that unlike the multiple-murder conviction it had raised *sua sponte*, the answers to the other four questions were "not so obvious." See *Rodriguez*, 336 Ill. App. 3d at 13-14. It concluded that if it addressed the unbriefed issues, it would be forced to speculate about the arguments the parties might have presented had the issues been raised, and to engage in such speculation would only cause further injustice. See *Rodriguez*, 336 Ill. App. 3d at 14.

The approach taken in *Rodriguez* is consistent with the plain-error doctrine of Supreme Court Rule 615(a), which applies to plain errors "not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). The term "plain" as used in the plain-error doctrine is synonymous with "clear" and is the equivalent of "obvious." *In re M.W.*, 232 Ill. 2d

408, 431 (2009).This means that an appellate court cannot correct an "error" unless the error is clear or obvious under current law. *United States v. Olano*, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 519, 113 S. Ct. 1770, 1777 (1993).Here, there is no indication that any error was obvious under current law.[2]

We find that under the circumstances, the authority-to-consent issue and the possibility that counsel lacked effectiveness in raising it, which the appellate court identified and addressed as an issue, was not an obvious error that could have been resolved without speculating as to what the arguments of the parties would be. We therefore conclude that it should not have been addressed. The appellate court's *sua sponte* consideration of the issue constituted error in this case. See *People v. Hunt*, 234 Ill. 2d 49, 56 (2009) (this court found that the appellate court's *sua sponte* consideration of issues not considered by the trial court and never argued by the parties constituted error; and this court examined the merits of the additional issues only because both parties urged this court's consideration of them). Accordingly, we find that the appellate court's analysis finding that Mathews lacked authority to consent to the search must be vacated.

We now turn to the issues that were properly raised in the appellate court and that are raised again before this court in defendant's briefs. In that regard, defendant first argues that her trial counsel was ineffective in not litigating a motion to suppress based on the argument that Mathews did not voluntarily consent to the search. According to defendant, a conflict existed between the testimony of

---

[2]We note that the issue before us does, however, differ somewhat from a plain-error issue. The plain-error doctrine applies to cases where the defendant forfeited his issue by not properly preserving it in the trial court, but is nonetheless raising the issue before the appellate court. See, *e.g.*, *People v. Piatkowski*, 225 Ill. 2d 551 (2007). This is in contrast to the situation where the issue may or may not have been raised before the trial court, but the appellate court is addressing the issue *sua sponte* without defendant raising it before the appellate court. In a plain-error case, the defendant has the burden of persuasion before the appellate court on the threshold question of whether plain, obvious error occurred. *In re M.W.*, 232 Ill. 2d at 431. In the case before us, even if it could be said that error occurred, it was not an "obvious" error.

the police officers and the defense witnesses as to the voluntariness of Mathews' consent.

The State responds that even though defense counsel withdrew his motion to suppress prior to trial, the defense nevertheless presented evidence as to the voluntariness of Mathews' consent during trial and then questioned the voluntariness of the consent during closing argument. The trial court then in turn resolved the credibility question as to whether consent was voluntary in favor of the State's witnesses. Accordingly, the State contends, the result of the proceeding would have been no different had a motion to suppress actually remained filed.

This court has adopted the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), to determine if a defendant was denied effective assistance of counsel. *People v. Manning*, 227 Ill. 2d 403, 412 (2008). To prevail under that test, a defendant must show both that his counsel was deficient and that this deficiency prejudiced the defendant. *People v. Bew*, 228 Ill. 2d 122, 127 (2008), citing *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. If it is easier to dispose of an ineffective assistance claim on the ground that it lacks sufficient prejudice, then a court may proceed directly to the second prong and need not determine whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

For a defendant to establish that prejudice resulted from his trial counsel's " 'failure to file a motion to suppress, [he] must show a reasonable probability that: (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed.' " *Bew*, 228 Ill. 2d at 128-29, quoting *People v. Patterson*, 217 Ill. 2d 407, 438 (2005), citing *People v. Orange*, 168 Ill. 2d 138, 153 (1995). Moreover, the failure to file a motion to suppress or the withdrawal of such a motion prior to trial does not establish incompetent representation when it turns out that the motion would have been futile. See *People v. Patterson*, 217 Ill. 2d at 438.

Applying the above-mentioned principles to defendant's claim, it is clear that defendant cannot satisfy her burden under *Strickland* because, under the special circumstances presented here, the record indicates that there is no reasonable probability that the trial court

would have granted a motion to suppress based on an argument that Mathews did not give her consent voluntarily. Defendant's trial counsel withdrew defendant's motion to suppress immediately prior to the start of trial, but then proceeded to introduce evidence at trial as if he had such a motion before the court. Parenthetically, we note that while it is true that generally a defendant aggrieved by an unlawful search and seizure must file a motion to suppress before trial if he wants to challenge the evidence seized, it is also true that the trial court has discretion to allow a motion to suppress made during trial if certain statutory circumstances are satisfied. See 725 ILCS 5/114–12 (West 2008); *People v. Hoffman*, 84 Ill. 2d 480, 485 (1981); *People v. Flatt*, 82 Ill. 2d 250, 262-63 (1980). Moreover, a trial court has the authority to hold a joint suppression hearing and bench trial where a defendant does not object to the process. See *People v. Johnson*, 363 Ill. App. 3d 608, 612 (2006). Although neither of these two scenarios is exactly what happened here, it is undeniable that the evidence that defendant presented at trial went mostly to the question of whether Mathews' consent to the search was voluntary. Defendant presented very little, if any, evidence challenging the fact that cocaine was found in plain view on a night stand in close proximity to defendant in a bedroom that she occupied with her codefendant boyfriend.

Furthermore, in closing argument, the defense assented to the officers' testimony concerning the discovery of the drugs and defendant's presence in the room, but argued only that these facts indicated "mere presence" and not the constructive possession needed to prove her guilt beyond a reasonable doubt. As such, the question of whether defendant was guilty beyond a reasonable doubt of possession of a controlled substance did not involve any true factual or credibility determinations, but rather was simply a matter of assessing the largely uncontested circumstances in comparison with the established law for proving actual or constructive possession. At any rate, defendant had no argument that the officers lacked credibility with respect to the basic fact that defendant was found present in a room with cocaine. Instead, the arguments of the parties at trial with respect to the credibility of the witnesses centered exclusively on whether or not Mathews consented to the search. Specifically, defense counsel argued that the officers' testimony that Mathews simply gave

up her keys was not believable. Defense counsel also argued that Giles' testimony that the officers had Mathews muscled up against a wall while aggressively interviewing her was "unimpeached." Finally, defense counsel noted that Mathews had testified that police told her she would lose her apartment if she did not sign the consent form.

In rebuttal, the prosecutor addressed defendant's attacks on the credibility of the police officers over the consent to search. First, the prosecutor noted that Giles' testimony was impeached by the testimony of Officer Lotts, who stated that the officers did not threaten Mathews or get physical with her. With respect to Mathews' testimony, the prosecutor asked the trial judge to take into account the demeanor of the witness and the fact that she had a bias to testify favorably on behalf of defendant. The prosecutor concluded by noting that the voluntariness of the consent to search was an issue that boiled down to the credibility of the witnesses and that the State had given the court two credible witnesses in that respect. The prosecutor, like defense counsel, made no argument with respect to the credibility of the witnesses concerning anything other than the consent to search.

Under these circumstances–where the only issue with respect to the credibility of the witnesses that is raised by the facts of the case and the arguments of the parties involved the voluntariness of Mathews' consent to search–we believe it is clear that when the court noted that it had resolved the credibility of the witnesses in favor of the prosecution, it was referring to the testimony presented on the consent to search. We therefore find that there is no reasonable probability that a motion to suppress would have been granted or that the outcome of the trial would have been altered. Accordingly, we conclude that defendant has failed to satisfy her burden of meeting the second prong of *Strickland* by showing that she was prejudiced by her trial counsel's decision to withdraw the motion to suppress prior to trial.

Defendant next argues that she was not proved guilty beyond a reasonable doubt of possession of a controlled substance. She contends that there was nothing to connect her to the cocaine found in the bedroom other than her presence there, and the State therefore failed to show that she had actual or constructive possession of the drugs.

We note that a criminal conviction will not overturned unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Schmalz*, 194 Ill. 2d 75, 80 (2000). Rather, the relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Davison*, 233 Ill. 2d 30, 43 (2009), quoting *Jackson v. Virginia*, 433 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *Collins*, 106 Ill. 2d at 261. Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution. *Davison*, 233 Ill. 2d at 43, citing *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

In reviewing a conviction for possession of a controlled substance, the deciding question is whether defendant had knowledge and possession of the drugs. See 720 ILCS 570/402 (West 2004) ("it is unlawful for any person knowingly to possess a controlled *** substance"). Proof that a defendant had control over the premises where the drugs were located can help resolve this issue because it gives rise to an inference of knowledge and possession of the drugs, but control of the premises is not a prerequisite to a conviction. *People v. Adams*, 161 Ill. 2d 333, 345 (1994). Moreover, possession may be actual or constructive. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material. *Schmalz*, 194 Ill. 2d at 82. The rule that possession must be exclusive does not mean, however, that the possession may not be joint. *Schmalz*, 194 Ill. 2d at 82; *People v. Embry*, 20 Ill. 2d 331, 335-36 (1960). If two or more persons share the intention and power to exercise control, then each has possession. *Schmalz*, 194 Ill. 2d at 82. Finally, where possession has been shown, an inference of culpable knowledge can be drawn from the surrounding facts and circumstances. *Schmalz*, 194 Ill. 2d at 82.

In the present case, the evidence showed that police received a tip from a reliable, confidential informant that defendant and Loving were conducting cocaine sales from an apartment at 2804 N. Leavitt; and so, the officers went to that location and obtained consent from the leaseholder to search the apartment.[3] When the police entered the bedroom of the apartment at that address at 11:30 a.m., defendant and her fiance were half asleep on the bed. On top of the night stand and within arms reach of defendant, the officers observed, in plain view, a razor blade and a plastic bag containing 21 smaller bags that each contained cocaine. The police also recovered $355 from the top of the night stand. According to defendant's own testimony, she and Loving exerted joint control over the bedroom where they slept as overnight guests. When this evidence is viewed in the light most favorable to the prosecution and when all reasonable inferences are drawn in its favor, we believe that the evidence established both that defendant had joint possession of the drugs and that she had the requisite knowledge.

In reaching this conclusion, we find *Schmalz*, 194 Ill. 2d 75, to be instructive. There, police entered the bedroom on the second floor of a house after receiving consent to search by one of the occupants on the first floor. Inside the bedroom, police found four persons (one

[3]The trial court overruled defendant's hearsay objection to police testimony about the informant's tip, but the court did not consider the testimony for the truth of the matter asserted. Rather, the court considered it only for the purpose of explaining the reason the police went to the apartment at 2804 N. Leavitt. Compare *People v. Robinson*, 167 Ill. 2d 397, 414 (1995) (where this court considered an anonymous tip that drug sales were being conducted at a certain apartment where defendant was later arrested as substantive evidence of defendant's guilt of possession of a controlled substance with the intent to deliver), with *People v. Ramirez*, 244 Ill. App. 3d 136, 148-49 (1993) (where the appellate court cited *People v. Gacho*, 122 Ill. 2d 221, 247-49 (1988), for proposition that an officer's testimony about the substance of an informant's tip is inadmissible hearsay, unless used solely for the purpose of explaining why the wheels of a police investigation were set in motion). Because the trial court, as the trier of fact, did not consider this testimony as substantive evidence of guilt, we will not do so either. We further note that the question of whether the trial court's ruling was correct is not before us, and therefore we will not pass judgment on that question.

male and three females), one of whom was the defendant. The defendant was sitting on the floor, two persons were sitting on a couch, and a fourth person was sitting on a bed. Police found marijuana and drug paraphernalia on the floor within arm's reach of defendant. Drugs were also recovered from the couch. The officer did not see who actually placed the drugs and paraphernalia on the floor, no drugs were recovered from defendant's person, and it was established that defendant was not a resident of the house. All four persons found in the bedroom were charged with possession of cannabis. This court found that a rational trier of fact could have found the essential elements of the crime of possession of cannabis beyond a reasonable doubt, particularly because the evidence showed that defendant had knowledge of the presence of cannabis and that she had it in her immediate and exclusive possession. *Schmalz*, 194 Ill. 2d at 83.

Here, evidence of defendant's control over the room where the drugs were found was much stronger than in *Schmalz*,[4] and this control gives rise to an inference of knowledge and possession (*Adams*, 161 Ill. 2d at 345). The evidence established that defendant stayed at Mathews' apartment overnight and slept in the bed in the only bedroom in the apartment. According to defendant herself, at one point she left the room when Mathews knocked on the bedroom door to tell her that she was going out. Defendant then locked the front door of the apartment and returned to the bedroom. Thus, the evidence showed defendant's control and dominion over the room for purposes of connecting her to the drugs. Furthermore, the fact that defendant was not alone, but was with her codefendant fiance, does not defeat her possession of the narcotics because, as *Schmalz* noted, "if two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has

---

[4]We note that in *Schmalz* the defendant did not have exclusive control over the bedroom, as defendant did in the present case, and so the prosecution had to rely upon other circumstances to show the defendant's possession and knowledge of the drugs: *i.e.*, even though there was no food or snacks in the room, defendant told the officer that "[W]e're having a party," not "*They're* having a party." (Emphasis in original.) *Schmalz*, 194 Ill. 2d at 83.

possession." *Schmalz*, 194 Ill. 2d at 82. As our appellate court recently stated in *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009):

> " ' "The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband. [Citation.] When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of *joint* possession. To hold otherwise would enable persons to escape criminal liability for possession of contraband by the simple expediency of inviting others to participate in the criminal enterprise." (Emphasis added.)' " *Ingram*, 389 Ill. App. 3d at 901, quoting *People v. Hill*, 226 Ill. App. 3d 670, 673 (1992), quoting *People v. Williams*, 98 Ill. App. 3d 844, 849 (1981).

Moreover, the evidence was such that the trier of fact could have reasonably inferred that defendant had knowledge of the cocaine. In *Schmalz*, the illegal drugs were within a short distance of defendant, while in the instant case, the drugs were on a night stand within a short distance of the bed in which defendant was lying. A night stand in a bedroom is a place where it could reasonably be expected that a couple staying as overnight guests would place their valuable personal items. Mathews testified that the drugs did not belong to her and that no other persons were staying in her apartment other than defendant and her fiance. In sum, the evidence is not so improbable or unsatisfactory that it creates a reasonable doubt of guilt; we therefore will not set the conviction aside.

## CONCLUSION

The appellate court erred in *sua sponte* considering whether trial counsel was ineffective in not arguing that the leaseholder of the apartment lacked authority to consent to the search of her bedroom where the issue was not raised by the parties and there was no obvious answer to the issue that was controlled by clear precedent. With respect to the issues that were raised by the parties in the appellate court and again in this court, we find that defendant's arguments must be rejected. Defendant was not denied the effective assistance of counsel because of her trial counsel's withdrawal of a motion to

suppress where all the facts and circumstances related to the consent to search were presented to the trial court and it resolved the credibility of the witnesses on that issue in favor of the prosecution. Moreover, a rational trier of fact could have found defendant guilty beyond a reasonable doubt of the essential elements of the crime of possession of a controlled substance.

Finally, we note that the appellate court did not address the chain-of-custody issue raised by defendant before that court because it considered the issue that it raised *sua sponte* to be dispositive. Therefore, we remand the cause to the appellate court for consideration of defendant's remaining contention. See, *e.g.*, *People v. Richardson*, 234 Ill. 2d 233, 266 (2009).

Accordingly, we vacate the appellate court's judgment and remand the cause to the appellate court for further proceedings.

*Appellate court judgment vacated;*
*cause remanded.*