**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 170686-U

Order filed December 13, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0686 Circuit No. 16-CF-741 |
| SAMUEL M. POWELL, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices McDade and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State proved beyond a reasonable doubt that the defendant actually possessed a firearm.

¶ 2    The defendant, Samuel M. Powell, appeals from his conviction of unlawful possession of a weapon by a felon. The defendant argues the State failed to prove his guilt beyond a reasonable doubt where it did not prove that he actually or constructively possessed a firearm.

¶ 3                                    I. BACKGROUND

¶ 4    The State charged the defendant by indictment with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)). The case proceeded to a jury trial.

¶ 5    Peoria Police Officer Eric Ellis testified that he assisted in the investigation of an incident that occurred at the Big Hollow liquor store at 11 p.m. on October 5, 2016. Ellis reviewed security camera videos that showed the defendant enter and leave the liquor store.

¶ 6    Mohammed Hamad testified that he worked as a cashier at the Big Hollow liquor store. At approximately 10:20 p.m., on October 5, 2016, Hamad waited on Anthony Gulley. After Anthony left the store, he spoke to two men in the parking lot. Hamad identified one of the men as the defendant. When Hamad heard the defendant and Anthony speaking loudly, he walked out to the parking lot. Hamad said the defendant "had something" in his hand, but he was not sure if it was a gun. The State asked:

> "Q. Well, what did you say to him?
>
> A. Nothing. I, myself, all the customer, all the people there, we have a lot of people there, I said to him, 'Don't kill him, don't do anything to him.' And I told him, 'Go, please. I don't mean to be inappropriate. Everybody go home.' And Tony back at the store. [The defendant] go home.
>
> Q. Did you tell [the defendant] to put his gun away?
>
> A. Yeah, yeah, I'm thinking this—when I see him he put his hand there, I'm thinking or this gun, but I'm not sure if it's gun or not.
>
> Q. And what color was the gun; can you describe it?
>
> A. Something silver with his hand.
>
> Q. Something silver was in his hand?
>
> A. Yeah.

Q. And he was pointing it at Tony, the man with the ball cap?

A. Yeah.

Q. And how close to Tony was he?

A. Face to face.

Q. And so what did you do after you told him to put the gun away?

A. Everybody left."

The police arrived after everyone left the parking lot. Hamad showed the surveillance video to the officers. The State admitted the surveillance video into evidence without objection.

¶ 7    The surveillance video consists of 16 video clips taken from the 16 different security cameras located inside and outside of the Big Hollow liquor store. Together, these clips show Anthony enter and leave the liquor store, and then the defendant and another black male enter and leave the liquor store. As the defendant leaves the store, he has his right hand in his right front pocket. Once outside the store, the defendant removes his hand from his pocket and is holding a silver-colored object. The top of the object is longer than the bottom as if the object has a handle on the bottom. The defendant initially points the object at the ground and walks casually. A few moments later, the defendant squats down and runs toward the parking lot with the object in his right hand.

¶ 8    Gladys Gulley testified that she lived at 4043 West Hillmont Road in Peoria with her husband, Anthony. On October 5, 2016, Anthony left the house at 10:30 p.m. to go to the liquor store. At 11:30 p.m., Gladys went to lock the door to the house and saw the defendant and another man walk past on the opposite side of the street. After locking the door, Gladys looked out an upstairs bedroom window and saw the defendant cross to the side of the street that her house was located on. Gladys walked to another bedroom and heard three or four gunshots.

3

Gladys did not see who fired the shots. Gladys called the police and found a bullet laying on a bed located in a downstairs bedroom. Gladys also noticed bullet holes in the side of a red car that was parked in the driveway. On cross-examination, Gladys said that one of the men was carrying a firearm in his hand.

¶ 9 Tiffany Brown testified that at approximately 11:45 p.m., on October 5, 2016, she was at Gladys's house when she heard a noise that sounded like someone was trying to open the door. Brown looked out the window and saw two men. One of the men, who wore a black T-shirt, was walking on the sidewalk across the street from the house. The other man, whom Brown identified as the defendant, wore a white T-shirt and was walking on the sidewalk that was nearest to the house. Brown thought that the defendant looked "suspicious" and "kept looking around and trying to like looking at the house and then kept looking behind him." Brown moved away from the window and heard three or four gunshots.

¶ 10 Peoria Police Officer John Rodgers testified that he was dispatched to the Gulley residence after receiving reports of shots fired in the area. Rodgers spoke with Gladys and Brown. Rodgers also found a projectile laying on a bed inside the house and a shell casing across the street from the house. Rodgers noticed that a red car in the driveway had been struck by two bullets. While investigating the shooting, Rodgers received information that the defendant had been seen on Vinton Avenue, approximately two to three blocks from the Gulley residence. Rodgers went to this location and saw a black male wearing a black shirt carrying a semiautomatic rifle, and the defendant, who was wearing a white shirt. Both men ran toward the back corner of a nearby house. Rodgers followed the defendant and the other suspect toward the house. Two other individuals were standing outside the house, and Rodgers ordered them to lie on the ground. The owner of the house, Bonnie Mansfield, let Rodgers into the house. Rodgers

4

saw a rifle on the floor and found the defendant lying on a couch that was located approximately five to six feet from the rifle. Rodgers took the defendant into custody, and then he and several other officers searched the house. The officers found a black male in a basement bedroom. Rodgers identified this man as Jacoby Washington, the man who had previously been seen wearing a black shirt. The man was lying on top of a Ravens .25-caliber semiautomatic pistol. Rodgers described the firearm as a "smaller handgun" that is "silver with black handle." Rodgers identified a photograph of the firearm as well as photographs of the projectile that Rodgers found in the Gulley residence and the shell casing found across the street. The State introduced the photographs into evidence.

¶ 11      Peoria Police Officer Scott Goforth testified that he assisted in the investigation of the shooting at the Gulley residence. Goforth placed the two men whom Rodgers directed to lie on the ground under arrest. After arresting the two individuals outside of the residence, Goforth assisted Rodgers in clearing the house. Inside, Goforth saw the defendant lying on a couch.

¶ 12      Peoria Police Officer Brittany Martzluf testified that she went to the Gulley residence to collect evidence. Martzluf found a .25-caliber shell casing on the sidewalk across the street from the house and a bullet inside the house in a basement bedroom. Martzluf also noticed bullet holes to the driver's side of a vehicle parked in the driveway. Martzluf was unable to detect any fingerprints on the shell casing. Martzluf also took the handgun discovered at the house on Vinton Avenue to the Morton crime lab for analysis.

¶ 13      Forensic scientist Jason List testified that he examined the Raven .25-caliber semiautomatic pistol recovered from the house on Vinton Avenue and the shell casing found on the sidewalk across from the Gulley's house. List determined that the shell casing had been

ejected from the pistol. List examined the bullet recovered from the basement bedroom. List determined that the bullet had been fired from the pistol.

¶ 14　　　　The parties stipulated that forensic scientist Ann Yaegle would testify that she was unable to obtain a sufficient amount of DNA from the handgun to conduct a DNA analysis. The parties also stipulated that Officer Maverick Rasmussen would testify that the black male wearing a black shirt in the Big Hollow liquor store security video is David Mansfield and not Jacoby Washington.

¶ 15　　　　The defendant elected not to testify, and the defense offered no evidence. The jury found the defendant guilty of unlawful possession of a weapon by a felon. Thereafter, the court sentenced the defendant to seven years' imprisonment. The defendant filed a notice of appeal.

¶ 16　　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　The defendant argues the State failed to prove his guilt of unlawful possession of a weapon by a felon beyond a reasonable doubt where the State did not prove that the defendant actually or constructively possessed a firearm. The State responds that it proved that the defendant actually possessed a firearm because the video evidence showed that the defendant produced a silver-colored pistol from his pocket after he left the liquor store.

¶ 18　　　　In a challenge to the sufficiency of the evidence, "it is not the function of this court to retry the defendant." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). "Rather, the relevant question is ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *Id.* (quoting *People v. Davison*, 233 Ill. 2d 30, 43 (2009) quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Id.*

6

Determinations of witness credibility, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact, not the reviewing court. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). We will not set aside a criminal conviction unless the evidence is so improbable and unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 19    To convict the defendant, the State was required to prove that the defendant possessed "on or about his person" a firearm and that he had been previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2016). We limit our discussion to the possession element as the parties do not dispute the proof of the defendant's prior felony conviction.

¶ 20    The State may satisfy the possession element with evidence that the defendant either actually or constructively possessed a firearm. *People v. Ingram*, 389 Ill. App. 3d 897, 899 (2009). "Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material." *Givens*, 237 Ill. 2d at 335. To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the weapon, and (2) that he exercised exclusive and immediate control over the area where the weapon was found. *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10.

¶ 21    In this case, the State's evidence established that the defendant and Anthony had a boisterous exchange outside of the Big Hollow liquor store. Following this exchange, Hamad went to the parking lot where he noticed an object in the defendant's hand. Hamad was not sure if the object was a firearm, but he made several statements that referred to or indicated that the object was a firearm. Hamad also told the defendant not to kill Anthony. This statement

7

indicated that the defendant possessed some kind of weapon as there was no indication that the defendant and Anthony were involved in a physical altercation. Hamad's testimony thus provided some evidence from which the fact finder could reasonably infer that the defendant possessed a firearm. However, this was not the only evidence of the defendant's actual possession of a firearm. The surveillance video further indicated that the defendant possessed a firearm. The video shows the defendant enter and leave the liquor store. When the defendant leaves the store, he removes his hand from his right pocket. While the video quality is poor, it is clear that the defendant is holding an object in his right hand. The defendant holds the object with a pistol grip—his lower fingers are clasped around a handle and his index finger juts further out. Initially, the defendant points the object at the ground. As the defendant turns, the top of the object becomes visible and clearly extends beyond the handle that is clasped in the defendant's hand. The general "L" shape of the object gives rise to the reasonable inference that the defendant had a small firearm in his right hand. Moreover, any notion that this object is not an actual firearm is dispelled by the defendant's behavior. Moments after the defendant produces the "L"-shaped object, he assumes an aggressive posture and charges to an area out of view as if he is pursuing someone or something. Thus, the defendant's behavior combined with the parts of the object that are visible permitted the fact finder to reasonably infer that the defendant possessed a firearm. Accordingly, we conclude that the State proved the defendant's guilt beyond a reasonable doubt.

¶ 22                                  III. CONCLUSION

¶ 23            The judgment of the circuit court of Peoria County is affirmed.

¶ 24            Affirmed.