NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220670-U

NO. 4-22-0670

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 12, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Carroll County |
| JO HI CHASE, | ) | No. 21CF11 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John J. Kane, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed defendant's conviction for possession of
methamphetamine.

¶ 2   In February 2021, defendant, Jo Hi Chase, was charged with having "[knowingly]
possess[ed] less than 5 grams of methamphetamine or a substance containing methamphetamine"
in violation of the Methamphetamine Control and Community Protection Act (Act) (720 ILCS
646/60(b)(1) (West 2020)). In November 2021, following a bench trial, the trial court found
defendant guilty and later sentenced him to 120 days in the county jail.

¶ 3   Defendant appeals, arguing that the State failed to prove that defendant had actual
or constructive possession of methamphetamine. We disagree and affirm defendant's conviction.

¶ 4                    I. BACKGROUND

¶ 5                    A. The Charges

¶ 6   In February 2021, defendant was charged with having "[knowingly] possess[ed]

less than 5 grams of methamphetamine or a substance containing methamphetamine" in violation of the Act (*id.*). The State alleged generally that police officers found a clear glass pipe containing methamphetamine residue in defendant's coat.

¶ 7                                    B. The Bench Trial

¶ 8            In November 2021, the trial court conducted a bench trial.

¶ 9                              1. *Lieutenant Nicholas Meeker*

¶ 10           Lieutenant Nicholas Meeker testified that he was employed by the Savanna Police Department. In February 2021, Meeker responded to a call regarding suspicious activity at Whiskey River bar in Savanna (Whiskey River). When Meeker arrived at the bar, the bartender, who had called the police, pointed out two patrons—defendant and Jessica Engelkens—as the subjects of the suspicious activity. Meeker then identified defendant in open court.

¶ 11           Meeker testified that when he approached defendant and Engelkens, they were seated at the end of the bar with "a backpack, a brown Carhartt-style coat and *** another bag" next to them. Meeker asked the pair "if they would step outside and speak with [him]," and they agreed.

¶ 12           Once outside, Meeker explained to the pair that he had received a complaint that one of them might have a firearm. After obtaining defendant's consent to search the possessions that were with him in the bar, Meeker retrieved the backpack, coat, and bag and placed them on a bench outside of the business. Meeker asked defendant "if all of those items were his and if he would grant [Meeker] consent to go through them." Defendant answered in the affirmative.

¶ 13           Meeker searched the coat and found inside of one of the pockets "a small black zipper case that had two clear glass pipes that appeared to have residue of methamphetamine." Meeker then handed the black case and pipes to Officer Josi Anderson before placing defendant

under arrest.

¶ 14                                   2. *Officer Josi Anderson*

¶ 15          Officer Josi Anderson testified that she responded to the call from Whiskey River with Meeker. After arriving at the bar, she first spoke with the bartender and then spoke with defendant and Engelkens, who were sitting at the end of the bar. When they stepped outside, defendant and Engelkens left their items "at the chair inside," where they had been seated. Anderson testified that Meeker asked defendant "if he would consent to [a] search of his belongings that were inside" and then went inside to grab the items. After returning outside, Meeker asked defendant if the items were his, and defendant responded in the affirmative. Anderson testified that Meeker searched the brown coat and found a black case containing "two clear glass smoking devices." Anderson secured those devices in her squad car and field tested them for residue before submitting them that night to the Illinois State Police Division of Forensic Services.

¶ 16                                   3. *Rhonda Earl*

¶ 17          Rhonda Earl testified that she was employed as a drug chemist with the Illinois State Police Division of Forensic Services in Rockford, Illinois. She tested residue samples taken from inside the glass pipes and determined that they contained methamphetamine.

¶ 18                                   4. *Defendant*

¶ 19          Defendant testified that he went to Whiskey River looking for Engelkens because "[s]he had—well, she had my jacket—my sweatshirt or whatever it was. She lost it. I was looking for it." She had previously been with defendant at a different bar, but then she left and went to Whiskey River. Defendant testified that he was not wearing a coat because he had a long-sleeved shirt on. When asked whether he was standing at the end of the bar with Engelkens,

- 3 -

defendant responded, "No. We were sitting at our booths or at the stool, you know. They have stools there." However, after further questioning, defendant stated they were sitting on stools at the end of the bar and no items were with them. Their bags and his pool cue were sitting on a ledge within three feet of where they were sitting.

¶ 20       Defendant denied having a brown Carhartt coat. Defendant testified that at some point Meeker asked the two if they would step out of the bar, and they did so. Meeker then asked if he could retrieve their belongings and went inside to grab them. When asked what items Meeker retrieved from the bar, defendant stated, "Well, all I seen at first was the pool stick and then he brought out everything or it was like they both handed it—she wasn't around and then she was and then—." Counsel interjected and asked who she was, to which defendant replied, "The other officer."

¶ 21       Defendant denied telling the officers that the coat was his, asserting that he had claimed only the pool stick. Defendant testified, "[Meeker] asked me is this your pool stick and I said yes. I said that's not mine, but he had everything else in his hands or she did or however. I can't remember how that part went. It was like—I thought he had it all, but then she had it too."

¶ 22       Defendant further testified that he claimed ownership of the pool stick and the backpacks but not the brown coat. Regarding the coat, defendant stated, "There was a lot of coats in the bar. They were on the chairs and that. There were just coats everywhere and there was a place to hang them up but they were all full." Defendant's counsel then showed defendant the black case with the pipes inside, asking defendant whether he had seen them before. Defendant responded, "No. I don't even see a case." When asked whether on February 14, he had "a black case with two glass pipes in it," defendant responded, "No."

¶ 23       On cross-examination, defendant testified that he and Engelkens did not bring any

- 4 -

coats with them to the bar, only sweaters. When asked whether he had said the belongings that Meeker was holding were his, defendant clarified that he had said, "[T]hat's my pool stick."

¶ 24                              C. The Trial Court's Decision and Sentence

¶ 25          The trial court first found that the State had shown that the pipe residue contained methamphetamine. The court then summarized the evidence as follows.

> "The officer is called to the Whiskey River Saloon, they enter, speak with the bartender, *** [who] directs them to the [d]efendant and Ms. Engelkens who are seated at the end of the bar with their belongings. They're asked to step outside. They do so. They leave their belongings in the Whiskey River. The officer testifies that he goes back in. Lieutenant Meeker testified that he goes back in, grabs these items where these two were seated, and brings them out.
>
> [Defendant] indicates that the brown coat is not his. The other items he was carrying. The bags he indicated he was carrying in his testimony as well as he had a pool cue, but when asked by Lieutenant Meeker which was overheard by Officer Anderson, are these your items, it was yes. [Defendant's] answer was yes. In fact, when asked on direct on his testimony, [defendant] indicates the coat wasn't Ms. Engelkens. She didn't have a coat, but it was with their items. So I think once [defendant] realized what was inside of the brown coat, then he has denied it's his coat."

¶ 26          Ultimately, the trial court viewed the officers' testimony to be more credible than defendant's testimony, finding that the State proved beyond a reasonable doubt that defendant possessed methamphetamine residue in the glass pipe.

¶ 27          In July 2022, the trial court sentenced defendant to 120 days in the county jail.

¶ 28        This appeal followed.

¶ 29                    II. ANALYSIS

¶ 30        Defendant appeals, arguing that the State failed to prove that defendant had actual or constructive possession of methamphetamine. We disagree and affirm defendant's conviction.

¶ 31            A. The Standard of Review and the Applicable Law

¶ 32        "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Sauls*, 2022 IL 127732, ¶ 52, 184 N.E. 3d 1009. "On appeal from a criminal conviction, we will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 33        "A person who [knowingly] possesses less than 5 grams of methamphetamine or a substance containing methamphetamine is guilty of a Class 3 felony." 720 ILCS 646/60(a), (b)(1) (West 2020). "Possession may be actual or constructive." *People v. Crane*, 2020 IL App (3d) 170386, ¶ 30, 178 N.E.3d 1164. "Actual possession is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material." *People v. Givens*, 237 Ill. 2d 311, 335, 934 N.E.2d 470 (2010). "[W]here possession has been shown, an inference of culpable knowledge can be drawn from the surrounding facts and circumstances." *Id.*

¶ 34                   B. This Case

¶ 35        Here, the testimony of the two police officers was sufficient for the trial court to

find that defendant had actual possession of methamphetamine.

¶ 36        The officers testified that when they first contacted defendant, he was seated at the end of the bar with "a backpack, a brown Carhartt-style coat and *** another bag" near his person. Once defendant stepped outside with the officers, Meeker then retrieved those same belongings from where defendant had been seated and asked defendant if they were his, placing them on a bench outside the bar for defendant to see. Both officers testified that defendant acknowledged to Meeker that the items were his and then consented to the search of those items, including the brown coat. When Meeker searched the coat, he found a black case with two glass pipes inside bearing methamphetamine residue.

¶ 37        Further, defendant acknowledged at trial that he owned the items that the officers found alongside the coat and that those items were within a few feet of where he was seated at the bar.

¶ 38        We note that the trial court explicitly found the officers' testimony more credible than that of defendant. See *Sauls*, 2022 IL 127732, ¶ 52 ("[A] reviewing court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses."); *People v. Carter*, 2021 IL App (4th) 180581, ¶ 68, 188 N.E.3d 391 ("When the trial court favors us with [an explicit credibility] finding, we are at the height of our deference to that court.").

¶ 39        Because (1) defendant acknowledged owning the coat, (2) the coat was in close proximity to defendant in the bar, and (3) the coat was placed alongside his other belongings, viewing the evidence in the light most favorable to the prosecution, we conclude the trial court could have reasonably found that defendant had immediate and exclusive control over the coat and its contents. Further, for the same reasons, the court could also have reasonably inferred that

defendant had knowledge of the pipes because they were in his coat pocket.

¶ 40                                    III. CONCLUSION

¶ 41             For the reasons stated, we affirm the trial court's judgment.

¶ 42             Affirmed.