2021 IL App (1st) 182240-U

SIXTH DIVISION
March 12, 2021

No. 1-18-2240

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13 CR 13576 |
| | ) | |
| KEESLER WILSON, | ) | |
| | ) | Honorable Kevin M. Sheehan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Justice Harris and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Claim that trial counsel was ineffective for not eliciting statements from testifying witness was not frivolous or patently without merit; reversed and remanded for second-stage postconviction proceedings.

¶ 2    Defendant, Keesler Wilson, appeals an order of the circuit court that summarily dismissed his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, Wilson contends that: 1) he raised an arguable claim of ineffective assistance of trial counsel; 2) he raised an arguable claim that he was actually innocent; and 3) his postconviction

counsel provided unreasonable assistance by not including a viable and readily obvious claim in the petition. Because Wilson's ineffective assistance claim is not frivolous and patently without merit, we reverse and remand the entire petition for second-stage proceedings.

¶ 3                                  I. BACKGROUND

¶ 4     Pursuant to a search warrant executed on June 18, 2013, heroin, drug paraphernalia, and a gun were found in an apartment located at 4943 South Michigan Avenue in Chicago. Wilson was arrested and charged with being an armed habitual criminal, possession with intent to deliver heroin, and unlawful use of a weapon by a felon. The State later entered a *nolle prosequi* on the armed habitual criminal count. Wilson's defense at trial was that he had no connection to the recovered contraband. Wilson's postconviction petition asserts that evidence establishes that Edmund Forest owned and possessed the heroin for which Wilson was convicted.

¶ 5                              A. Pretrial Proceedings

¶ 6     Wilson was initially represented by attorney Larry Beaumont. However, Beaumont informed the court in April 2014 that there was a potential conflict involving a witness. Beaumont filed a motion to withdraw about a month later, stating that Wilson had disclosed information "that would tend to put counsel in direct conflict with another currently represented client." Wilson was thereafter represented by attorney Wham Cary.

¶ 7     On September 25, 2014, Wilson filed an answer to discovery that listed Edmund Forest, with an address in St. Charles, as a potential witness.[1] In court that same day, Cary stated that Edmund was in federal custody and Cary needed to "figure out what's going to be the best way to get him here." In December 2014, Cary told the court that his "central witness" was in federal

---

[1] Edmund's name is also spelled "Edmond" in the record. We use the spelling from Wilson's postconviction petition. Also, we refer to Edmund and other people by their first names where they share a last name with another person referred to in this order.

custody in Kane County. Cary had "made many efforts to try to get him here or facilitate that," but had been unsuccessful. The Federal Bureau of Prisons was not returning Cary's phone calls. Cary believed that Edmund was being held in a Kane County facility while awaiting transport to a facility in Wisconsin where he would serve a federal sentence. The assistant State's Attorney agreed to help Cary.

¶ 8 In court on January 26, 2015, Cary reported that Edmund might be at the Metropolitan Correctional Center in Chicago. However, the assistant State's Attorney could not find Edmund in the federal prisons inmate system and did not believe that Cary would be able to procure Edmund as a witness. On March 26, 2015, the assistant State's Attorney stated that he had issued a writ to bring Edmund to court, but in the meantime, Edmund was shipped to Marion, Illinois. The parties were having "early discussions of how we may be able to move forward with the case without this person being here, knowing what his testimony might be." On June 10, 2015, the assistant State's Attorney stated that it appeared that Edmund was back at the Metropolitan Correctional Center, but now Edmund's file indicated that he was not in the custody of the Bureau of Prisons.

¶ 9 On June 29, 2015, Cary told the court that Edmund was under a writ for another investigation and he was unsure if Edmund was available to be a witness at Wilson's trial. On September 23, 2015, Cary stated that Edmund would not be called as a witness.

¶ 10 B. Bench Trial

¶ 11 We previously summarized the evidence presented at Wilson's June 2016 bench trial in *People v. Wilson*, 2017 IL App (1st) 162639-U. At trial, the State presented the testimony of the officers who executed the search warrant at the apartment were the contraband was found. The officers' testimony was as follows.

¶ 12    After the officers had trouble entering the apartment, a woman opened the rear door and let them in. The woman told the officers that Wilson "just ran out the front." Wilson was brought back inside and told an officer that the rear bedroom was his. An officer recovered keys from Wilson that fit the front door locks. From the top dresser of the rear bedroom of the three-bedroom apartment, officers recovered a bundle of money and observed narcotics. Also in the bedroom were coffee grinders with narcotics residue, a kitchen scale, and a cutting agent. A .9-millieter Ruger handgun was recovered from a gold box on the top shelf of the closet. Also in the closet was a black shoebox that contained a clear plastic bag with suspect heroin. Officers further recovered a box of ammunition and insurance documents with Wilson's name and an address of 3655 West Lexington. Wilson was placed in custody and transferred to a police station. There, Wilson stated that he bought the recovered gun six months earlier from the street for approximately $200.

¶ 13    The parties stipulated that the bag recovered by police contained 729.2 grams of heroin.

¶ 14    The defense called four witnesses: Cornelia Tilson, Roger Tilson, Malinda Forest, and Wilson. They testified as follows.

¶ 15    Cornelia stated that at the time of the search, she lived in an apartment on South Michigan with her husband, Roger, her daughter, Malinda, her son, Edmund, and her grandchildren. Cornelia paid the rent and the lease and utilities were in her name. Cornelia could not remember the exact address of the apartment, eventually stating that it was 4436 South Michigan. Of the three bedrooms in the apartment, one belonged to Cornelia and Roger, one belonged to two grandchildren, and one—the rear bedroom—belonged to Malinda and Edmund. Malinda and Wilson had a child together who lived with Cornelia as well. Wilson often came over but did not stay overnight. Wilson did not have keys to the residence. Around 11:30 or 11:45 a.m. on the day of the search, Wilson came over to help with the child. Police officers arrived around 2 p.m.,

whereupon an officer searched Cornelia and took her house keys from her pocket. Cornelia did not see Wilson enter the rear bedroom area on the day of the search.

¶ 16    Roger testified that Malinda and Edmund shared the far back bedroom. Wilson came to the apartment "every now and then," but never spent the night.

¶ 17    Malinda testified that she stayed in the rear bedroom with Edmund. Malinda slept on an air mattress and Edmund slept on the floor. The dresser belonged to Edmund. She never saw narcotics or firearms in the bedroom. Wilson, who lived on Spaulding, came over once or twice a week, but never spent the night and did not have keys. In the bedroom, Malinda kept an insurance policy for the child she shared with Wilson. Malinda denied that Wilson went to the rear bedroom, stating, "He goes to the front, not to the back. My mom, no, she don't—we don't do that with my mom. That's my mom's place." Defense counsel asked whether Malinda had ever seen Edmund with narcotics and if Malinda had ever looked through Edmund's dresser or belongings. The court sustained objections to both questions. On the day of the search, Malinda left for work around 6 a.m.

¶ 18    Wilson testified that he would go to the apartment about twice a week and that Malinda and Edmund shared the rear bedroom. He did not know there were narcotics in the rear bedroom. Wilson never spent the night at the apartment and did not have a key. On the day of the search, Wilson arrived at the apartment around 1:30 p.m. and was escorted inside by the police. Wilson denied that officers took a key from him and stated that he did not tell the officers anything. Wilson also denied telling the officers that the rear bedroom was his and that he bought the recovered gun six months earlier on the street for $200. Wilson did not see the items that were recovered from the rear bedroom. Wilson admitted to prior convictions for possession of a controlled substance and aggravated unlawful use of a weapon.

¶ 19    The insurance documents entered into evidence were dated February and March 2012 and included an application for life insurance that named Wilson as the insured and "Milanda Forest" as the primary beneficiary. Wilson's address was listed as 3655 West Lexington Street in Chicago.

¶ 20    The State having waived an initial closing argument, defense counsel contended in closing that the State failed to show that Wilson had knowledge of the contraband. Defense counsel asserted that nothing tied Wilson to the contraband and there was no testimony that Wilson was ever in the room where the contraband was recovered. Further, that room was shared by Malinda and Edmund and nothing indicated that Wilson had exclusive ownership or control of the bedroom.

¶ 21    In rebuttal, the State asserted that the most logical scenario was that Wilson lived in the rear bedroom with the mother of his child. The State speculated that Wilson admitted that the rear bedroom was his because he did not want the apartment torn apart while his child and Cornelia were present.

¶ 22    In its oral ruling, the court stated in part that it was inherently unbelievable that Wilson never spent the night at the apartment. Overall, Wilson's testimony was "less than credible." The court found Wilson guilty of possession of between 400 and 900 grams of heroin with intent to deliver and unlawful use of a weapon by a felon. Wilson was sentenced to concurrent prison terms of 15 years and 7 years.

¶ 23                        C. Direct Appeal

¶ 24    Wilson raised two arguments on direct appeal: 1) the State did not prove that he had control of the bedroom where the contraband was recovered, and 2) it was plain error for the State to impeach him with convictions that were more than 10 years old. *Wilson*, 2017 IL App (1st) 162639-U. This court found that the evidence was sufficient to prove constructive possession of the contraband. *Id.* ¶ 34. We noted that by themselves, the insurance documents neither created nor

defeated an inference of constructive possession. *Id*. ¶ 28. We also stated that a person can have constructive possession of contraband even if others have access to the area where it was found, referring to the State's testimony that Wilson stated the rear bedroom was his and the defense testimony that Malinda and Edmund shared that bedroom *Id*. ¶ 29. The defense testimony did not defeat a finding that Wilson constructively possessed the contraband. *Id*. Further, there was no plain error related to the prior convictions. *Id*. ¶ 44. We affirmed the judgment of the circuit court.

¶ 25                                    D. Postconviction Petition

¶ 26    Through private counsel, defendant filed a petition for relief under the Act on June 29, 2018. Wilson sought relief based on actual innocence and ineffective assistance of counsel. The petition asserted that affidavits from Wilson, Malinda, and an investigator who spoke with Edmund established that Edmund, and not Wilson, owned and possessed the subject heroin. Wilson was "still actively seeking" to obtain an affidavit from Edmund, who was in prison in Minnesota. The petition stated that Edmund's admissions in Malinda's and Joy's affidavits were newly-discovered evidence because Edmund appeared unwilling to speak with defense counsel before trial. The petition alternatively asserted that defense counsel was ineffective if he could have spoken with Edmund and brought him in as a witness. According to the petition, defense counsel tried to bring in Edmund, but gave up without ever stating that it was impossible or could not be done. Further, defense counsel could have presented Malinda's affidavit and sought to introduce Edmund's statement.

¶ 27    The affidavits from Malinda and the investigator detail the statements made by Edmund. We summarize those affidavits below.

¶ 28    Malinda, Edmund's sister, averred that she first learned that the drugs in the apartment belonged to Edmund about a month after Wilson's arrest. Edmund told Malinda that he was sorry,

he made a big mistake, and the drugs in the apartment were his. Edmund promised he would "fix it" and admit in court that the drugs were his. According to Malinda, Wilson's trial attorney knew that Edmund had confessed to her that the drugs were his and tried to get him to testify, but was never able to do so. Malinda had been willing to testify about Edmund's confession, but was never asked. Edmund recently expressed a willingness to cooperate with Wilson in presenting a postconviction petition, and so a private investigator was sent to speak with Edmund in prison.

¶ 29    The investigator, Kai Joy, averred in his affidavit that he interviewed Edmund in prison and Edmund related as follows. In June 2013, Edmund was out on bond for a federal drug conspiracy case and lived at his mother's residence at 4943 South Michigan Avenue. Also living in the apartment were Cornelia, Roger, Edmund's two sons, Edmund's nephew, and "from time to time his sister Malinda." Edmund "stayed in the back bedroom alone and *** all of his personal items would have been in that room." Malinda would occasionally sleep in Edmund's room if Edmund was not home. Malinda usually slept on the front couch. Wilson never lived in the apartment and never had his own keys to the apartment. Wilson rarely spent the night, and when he did, he stayed in the front with Malinda. Wilson "never stayed in his room or had stuff in there." Edmund was not home when the search warranted was executed and did not return to the apartment that day. He later found out from his attorney, Larry Beaumont, that Wilson had been arrested for a gun and drugs that were found in his bedroom. Edmund confirmed to Joy that all of the drugs and paraphernalia were found in his bedroom.

¶ 30    Edmund had a conference call scheduled with Beaumont the next day and would discuss whether he could provide an affidavit. If Beaumont approved, "then he would be happy to do an affidavit and *** it would be a relief for him to do so." Edmund had been aware that Wilson's attorney was trying to get him to court to testify at trial, but Edmund was in federal custody and

bouncing around between different facilities. Edmund believed his attorney "maybe had some pull or a way to keep [Wilson's] attorney from getting him into court." Edmund further stated that he had never been previously interviewed by anyone about this matter.

¶ 31    On September 12, 2018, the circuit court summarily dismissed Wilson's petition and stated in part in a written order as follows. Neither Malinda's nor Joy's affidavit supported a claim of actual innocence. Both affidavits consisted solely of inadmissible hearsay statements. Further, Wilson's ineffective assistance claim was refuted by the record. Defense counsel thoroughly pursued Edmund before trial and knew at several points exactly where Edmund was. Counsel's decision not to continue to try to bring in an uncooperative witness who was imprisoned was a matter of trial strategy. Moreover, that counsel opted not to introduce Edmund's confession through Malinda further demonstrated that the failure to introduce Edmund's incredible confession—whether through Edmund or a third-party—was a matter of trial strategy. The court also found that Wilson could not show prejudice. Edmund was inherently unreliable and it was unlikely that Edmund would have admitted to being the owner of 729 grams of heroin and an unregistered firearm.

¶ 32    Wilson timely appealed.

¶ 33                                                    II. ANALYSIS

¶ 34    Wilson contends that his petition sufficiently stated claims for ineffective assistance of counsel and actual innocence. Wilson also asserts that his postconviction counsel provided unreasonable assistance for failing to add a viable and readily obvious claim to the petition. Because the ineffective assistance of counsel claim is not frivolous and patently without merit and the Act does not allow summary partial dismissals (*People v. Rivera*, 198 Ill. 2d 364, 374 (2001)), we address only that claim.

¶ 35    Wilson's ineffective assistance claim is based on counsel's failure at trial to elicit Edmund's confession to Malinda and derives from Malinda's affidavit. Wilson asserts that Edmund's confession to Malinda would have corroborated the defense theory that Wilson did not have constructive possession of the contraband and the contraband more likely belonged to Edmund, who lived in the rear bedroom. Noting that Malinda's affidavit does not address whether Edmund admitted to also owning the gun, Wilson contends that a trier of fact could arguably conclude that Edmund's admission that he possessed the drugs suggests that he possessed the gun as well, since the gun and drugs were found in the same closet.

¶ 36    The Act provides a method for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Proceedings begin when a petition is filed in the circuit court where the original proceeding occurred. *Id*. Postconviction proceedings have three stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). At the first stage, the circuit court reviews the petition, taking the allegations as true, and determines whether the petition is frivolous or patently without merit. *Hodges*, 234 Ill. 2d at 10. If the petition passes muster, then it advances to the second stage, where counsel is appointed, if necessary, and the petition must make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 245-46. If such a showing is made, then the petition advances to a third-stage evidentiary hearing. *Id*. at 246. Only at that hearing will the court make fact-finding and credibility determinations. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 37    A first-stage petition need only include a limited amount of detail and the threshold for survival is low. *Hodges*, 234 Ill. 2d at 9. The circuit court must take the allegations as true and construe them liberally. *People v. Allen*, 2015 IL 113135, ¶ 25. A petition may be dismissed as

frivolous or patently without merit only if it has no arguable basis in law or fact, in that it relies on an indisputably meritless legal theory or a fanciful factual allegation. *Id*. Meritless legal theories include those that are completely contradicted by the record, and fanciful factual allegations may be "fantastic or delusional." (Internal quotation marks omitted.) *Id*. The same standards apply whether the petition is filed *pro se* or prepared by an attorney. *People v. Tate*, 2012 IL 112214, ¶ 12. We review a summary dismissal of a postconviction petition *de novo*. *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 38    As a preliminary matter, we reject the State's suggestion that Wilson improperly raised alternative theories of actual innocence and ineffective assistance of counsel where both claims are premised on the same evidence. Litigants may plead alternative grounds for recovery, "regardless of the consistency of the allegations." *Heastie v. Roberts*, 226 Ill. 2d 515, 557 (2007).

¶ 39    Turning to the merits of the issue at hand, ineffective assistance claims are generally subject to the two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that: 1) counsel's performance was deficient, in that counsel's performance fell below an objective standard of reasonableness, and 2) the deficient performance prejudiced the defense, in that the error deprived the defendant of a fair trial with a reliable result. *Id*. at 687-88. A lower pleading standard applies to first-stage postconviction petitions, which need only allege that it is: 1) arguable that counsel's performance fell below an objective standard of reasonableness and 2) arguable that the defendant was prejudiced. *Tate*, 2012 IL 112214, ¶ 19. Arguments about whether counsel's decisions can be explained by trial strategy are inappropriate for first-stage postconviction proceedings. *Id*. ¶ 22.

¶ 40    To review, Malinda averred that about a month after Wilson's arrest, she learned that the drugs found in the apartment belonged to Edmund. Edmund told Malinda that he was sorry, he

made a big mistake, and the drugs in the apartment were his. According to Malinda, Wilson's trial attorney knew about Edmund's confession to Malinda, but did not ask Malinda to testify about it, even though Malinda was willing to do so.

¶ 41 The parties' briefs discuss whether Edmund's statements to Malinda—which are hearsay—would be admissible at trial and whether that question must be resolved now. Both parties note that the rules of evidence do not apply to postconviction proceedings. Wilson also addresses the statements' admissibility under *Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973), which requires the admission of an out-of-court statement that the declarant, and not the defendant, committed the crime if the court finds the statement trustworthy based on four factors. *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 95. Curiously, the State asserts that Malinda's affidavit is admissible at this stage of postconviction proceedings, but goes on to contend that "it is not clear that Malinda's affidavit would have been admissible at trial."

¶ 42 Per an amendment in April 2013, Illinois Rule of Evidence 1101(b)(3) (eff. Sept. 17, 2019) provides that the rules of evidence do not apply to postconviction hearings. In *People v. Robinson*, 2020 IL 123849, which was decided while this appeal was pending, our supreme court clarified the status of hearsay in postconviction proceedings. See *People v. Granados*, 172 Ill. 2d 358, 365 (1996) (supreme court decisions apply to all cases that are pending when the decision is announced, unless the court directs otherwise). The court found that in light of the April 2013 amendment to Rule 1101, a hearsay confession to the crime had to be considered when evaluating the defendant's claim. *Robinson*, 2020 IL 123849, ¶ 80. The court also stated that arguments about the reliability of the hearsay confession under *Chambers* were premature based on the procedural posture of the case—the defendant was seeking to file a motion for leave to file a successive postconviction petition. *Id.* ¶ 81. According to the court, "[t]he final determination as to the admissibility of ***

[the] extrajudicial confession cannot, and should not, be made until after [the] petitioner has overcome the hurdles of second- and third-stage proceedings." *Id*. As this first stage of proceedings, we will not assess whether Edmund's confession would be admissible and will take the allegations in Malinda's affidavit as true. See *id*. ¶ 83.

¶ 43    Malinda's testimony about Edmund's confession would have been helpful for Wilson's defense. To prove possession of a controlled substance with intent to deliver, the State must prove that the defendant had knowledge of the presence of the controlled substance, the controlled substance was within the immediate control or possession of the defendant, and the defendant intended to deliver the controlled substance. *People v. Chavez*, 327 Ill. App. 3d 18, 24 (2001). The contraband must be within the defendant's exclusive control. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. Edmund's confession that the drugs were his would support a defense that the drugs exclusively belonged to Edmund and not Wilson. Other testimony was presented at trial to support this theory. Cornelia, Roger, and Malinda testified that Malinda and Edmund shared the rear bedroom and Wilson never stayed overnight. Malinda also stated that Wilson did not go to the rear bedroom. Defense counsel tried to ask Malinda about Edmund's dresser and whether she had ever seen Edmund with narcotics. At this stage of the proceedings, it is at least arguable that counsel was ineffective for not eliciting Edmund's confession to Malinda, where it would have strengthened the defense that Wilson had neither knowledge nor control of the drugs.

¶ 44    We acknowledge that "the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband." (Internal quotation marks omitted.) *People v. Givens*, 237 Ill. 2d 311, 338 (2010). Where the relationship of others to the contraband is sufficiently close to constitute possession, the result is joint possession. *Id*. Here, however, Edmund's confession arguably supports the theory that

Wilson had no connection to the drugs and the drugs belonged only to Edmund. And, although Edmund did not mention the gun, it is not fanciful for Wilson to assert that Edmund's confession that the drugs belonged to him calls into question the possession of the gun that was also found in the rear bedroom.

¶ 45 Keeping in mind the low threshold that applies to first-stage petitions, Wilson's claim of ineffective assistance of counsel was not frivolous or patently without merit. The Act does not permit summary partial dismissals. *Rivera*, 198 Ill. 2d at 374. Thus, we do not address Wilson's other claims and his entire petition is remanded to the circuit court to be docketed for second-stage proceedings. See *People v. Plummer*, 344 Ill. App. 3d 1016, 1024-25 (2003).

¶ 46                                    III. CONCLUSION

¶ 47 For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded for further proceedings.

¶ 48 Reversed and remanded.