2022 IL App (1st) 181982-U

FIFTH DIVISION
MARCH 11, 2022

No. 1-18-1982

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 15260 |
| | ) | |
| JALEN WILLIAMS, | ) | Honorable |
| | ) | William B. Raines, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The defendant's conviction for aggravated unlawful use of a weapon is affirmed, where the trial evidence showed the defendant possessed a firearm, magazine, and live rounds, and discarded the items as he ran from police officers.

¶ 2    Following a bench trial in the circuit court of Cook County, the defendant-appellant, Jalen

Williams, was found guilty of aggravated unlawful use of a weapon (AUUW) and sentenced to a

one-year prison term. On appeal, the defendant argues that the State failed to prove him guilty

beyond a reasonable doubt of AUUW because the evidence did not show he possessed a firearm. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                      BACKGROUND

¶ 4     The defendant was charged by indictment with eight counts of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(B); (a)(1), (a)(3)(C); (a)(1), (a)(3)(I); (a)(2), (a)(3)(A-5); (a)(2), (a)(3)(C); (a)(2), (a)(3)(I) (West 2018)), premised on an incident in Chicago on September 27, 2017.

¶ 5     A bench trial commenced. Chicago police officer Michael Healy testified that on September 27, 2017, at approximately 4:23 p.m., he and his partner Officer David Marciano drove southbound in a marked police vehicle in the 7600 block of South Stony Island Avenue. There, Officer Healy curbed a vehicle with a broken taillight. Inside the vehicle, he saw two occupants, the driver and a passenger. Officer Healy identified the passenger in court as the defendant. As Officer Healy spoke to the driver, he smelled cannabis from inside the vehicle and instructed the occupants to exit the vehicle and go to the rear. The defendant exited the vehicle, walked past Officer Healy, and then fled eastbound across Stony Island Avenue.

¶ 6     Officers Healy and Marciano pursued the defendant on foot as the defendant ran through backyards in a residential area. Officer Healy lost sight of the defendant twice and eventually saw him being arrested in an alley. Officer Marciano radioed that the defendant may have dropped a weapon near 7618 South Cornell Avenue. Officer Healy went to that location and searched the yards. He recovered a magazine and live rounds at 7614 South Cornell Avenue, which was just north of 7618 South Cornell Avenue. Officer Marciano found a semiautomatic firearm, and the recovered magazine fit inside the firearm. At the police station, Officer Healy learned that the

defendant was under 21 years of age and had neither a firearm owner's identification (FOID) card nor a concealed carry license.

¶ 7     The State published footage from Officer Healy's body camera. We have reviewed the footage, which shows the police officers stopping a vehicle. The defendant then exits the passenger's side of the vehicle, walks towards the rear of the vehicle and towards the driver's side, then flees across the street. Officer Healy pursues the defendant as he turns right into an alley and then left into the backyard of a residence and out of Officer Healy's sight. Officer Healy then circles the area searching for the defendant. Eventually, Officer Healy catches up with other officers as they are detaining the defendant on the ground. Officer Healy then circles the area again until he announces there is a magazine on the ground in a gangway.

¶ 8     On cross-examination, Officer Healy testified that when the vehicle containing the defendant was stopped, Officer Healy approached the driver's side and Officer Marciano approached the passenger's side. Officer Healy observed the defendant and Officer Marciano from the other side of the vehicle for "[a] few seconds." The defendant was wearing shorts and no shirt. Officer Healy confirmed that he recovered the magazine in a walkway alongside a house, and he had not seen the defendant run in that walkway. He saw Officer Marciano recover the firearm about 20 feet away from the magazine, in the backyard at the same address.

¶ 9     Officer Marciano testified consistently with Officer Healy regarding the traffic stop, the defendant's flight, and the officers' pursuit. He added that, as he pursued the defendant on foot, he saw the defendant discard identification cards on the ground. The defendant ran through yards and, after he hopped a fence at 7618 South Cornell Avenue, a "pistol" fell to the ground. Officer Marciano knew it was a firearm "[f]rom the L-shape that displays the basic profile of the gun and

the fact that I am a police officer and I carry a weapon on a daily basis." The defendant picked the pistol up and continued running. Officer Marciano ordered the defendant to drop his weapon and drew his own weapon when the defendant did not obey his commands. Officer Marciano lost sight of the defendant, then observed him again running into an alley, and also saw a civilian in the alley.

¶ 10    Officer Marciano eventually tackled and arrested the defendant. The defendant did not have a firearm on him, and Officer Marciano asked him where was "the gun." Officer Marciano radioed for officers to retrace his steps and check the backyard at 7618 South Cornell Avenue and the surrounding backyards for the firearm. Officer Marciano then retraced his own steps and found a semi-automatic pistol lying on the ground near a chain-link fence separating the two yards at 7614 and 7618 South Cornell Avenue. The pistol did not contain a magazine, and the magazine Officer Healy recovered fit inside the pistol. Officer Marciano learned that the defendant did not live "anywhere near" the addresses where he ran.

¶ 11    The State entered into evidence the recovered pistol, magazine, and live rounds. The State also published footage from Officer Marciano's body camera. We have viewed this footage, in which Officer Marciano chases the defendant through a residential area. During the chase, Officer Marciano runs down the sidewalk of a residential area and turns right towards a gangway on the side of a house enclosed by a chain-link fence. A man can then be seen on the other side of the fence crouched down on the ground of the walkway. The man then stands up and runs out of sight. Officer Marciano opens the fence, walks down the gangway, and turns right into a backyard. He walks across the yard, peers into a nearby yard and, around the 2:30 mark in the video, an object that appears to be a firearm can be seen on the ground. Officer Marciano testified that at that 2:30

mark, he was at 7618 South Cornell Avenue, and a "semi-automatic pistol" could be seen in the neighboring yard at 7614 South Cornell Avenue. Officer Marciano then proceeds to search the area until he tackles the man in an alley and asks where the firearm is. Officer Marciano asks other officers to "check back" at 7618 South Cornell Avenue and a "couple houses around that corner." He then walks back with another officer until they reach the yard with the pistol on the ground. Officer Marciano puts on gloves and recovers a firearm. Officer Marciano testified that at this point in the video, he was in the backyard of 7614 South Cornell Avenue.

¶ 12   On cross-examination, Officer Marciano testified he first observed the defendant when he was ordered out of the vehicle. Defense counsel entered into evidence a pair of shorts with zippers on the side, which Officer Marciano confirmed resembled what the defendant was wearing during the chase. The recovered firearm was also in evidence. Defense counsel then stated, for the record, that he was inserting the firearm into the front pocket of the shorts. Defense counsel stated that the weapon did not fit into the pocket, as counsel placed the firearm into the pocket barrel first "as far as [counsel] could go." Officer Marciano did not observe a weapon sticking out of the defendant's pocket when the defendant exited the vehicle. Officer Marciano was "maybe" about 20 to 30 feet away from the defendant when he first saw the firearm in the defendant's hand. Officer Marciano did not know who the civilian in the alley was.

¶ 13   The State entered a stipulation that on September 27, 2017, the defendant did not have a valid FOID card or concealed carry license.

¶ 14   The defendant testified on his own behalf. He stated that the shorts entered into evidence were the same ones he was wearing on September 27, 2017. He explained that he ran from the police because he was scared, as he had previously been in a fight at a Walmart and received a call

that police officers "had a warrant for [him] or something like that." He testified that on "January 27, 2017," he did not "have a gun at any time ***."

¶ 15    On cross-examination, the defendant testified he did not wear any other shorts on the date of the incident. He confirmed he was wearing two pairs of underwear under the shorts. He testified that the fight at Walmart occurred three days prior to the incident, and a friend told him about the warrant on the morning of the incident. His friend was not a police officer and did not work at a courthouse.

¶ 16    At the conclusion of the trial, the court found the defendant guilty of all eight AUUW charges and noted the evidence showed the defendant was armed. In announcing its ruling, the trial court stated that Officers Healy and Marciano were credible, and their body camera footage was consistent with their testimony. The court also found the defendant to be credible for the "limited purpose" of describing his flight from the police, but that his story that he may have had a warrant for fighting at Walmart was a "lie."

¶ 17    The trial court merged all of the defendant's AUUW counts into count I, which was premised on the defendant, without a valid concealed carry license, knowingly carrying "on or about his person" a handgun that was "uncased, unloaded, and the ammunition for the weapon was immediately accessible." It subsequently sentenced him to a prison term of one year. This appeal followed.

¶ 18                                   ANALYSIS

¶ 19    We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 20    On appeal, the defendant argues that the State failed to prove him guilty of AUUW beyond a reasonable doubt because the evidence at trial did not show he possessed a firearm.

¶ 21    "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When reviewing the sufficiency of the evidence at trial, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 22    We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence at trial. *People v. Nere*, 2018 IL 122566, ¶ 69. Rather, it is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The trier of fact need not "disregard inferences which flow normally from the evidence before it," or "search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 23    In order to sustain the defendant's conviction for AUUW, the State had to prove beyond a reasonable doubt that he, without a concealed carry license, carried on or about his person a firearm, and the firearm was "uncased, unloaded, and the ammunition for the weapon was immediately accessible at the time of the offense." 720 ILCS 5/24-1.6(a)(1), (3)(B-5) (West 2018).[1] The defendant argues only that the evidence did not establish his possession of the firearm.

¶ 24    Generally, possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession, which is at issue in this case, "is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material." *Id.* The State may prove actual possession through testimony showing that the defendant "exercised some form of dominion over the weapon, such as trying to conceal it or throwing it away." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94. Whether there is possession or control is a question of fact to be determined by the trier of fact. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000).

¶ 25    After reviewing the evidence in this case in the light most favorable to the State, we find that a rational trier of fact could reasonably conclude that the defendant possessed the firearm and magazine recovered near the route on which he fled from the police. When Officers Healy and Marciano ordered the defendant to exit the vehicle, he ran from them into a residential area. See

---

[1]We note that AUUW counts II through VIII were merged into AUUW count I, which cites section "24-1.6(a)(1), (3)(B)" of the Criminal Code of Procedure (720 ILCS 5/24-1.6(a)(1), (3)(B) (West 2018)) as its statutory basis. However, the language in the body of count I describes the factual basis for a section 24-1.6(a)(1), (3)(B-5) violation of the Code (720 ILCS 5/24-1.6(a)(1), (3)(B-5) (West 2018)). The citation to the wrong subsection is of no moment as defendant was clearly apprised of the charge against him. See *People v. Cohn*, 2014 IL App (3d) 120910, ¶¶ 16-18. Further, defendant does not challenge his indictment on appeal, forfeiting the issue (Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)), and only disputes whether he possessed a firearm, an element in both subsections.

*People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 64 ("[F]light, when considered with all the other evidence, is a circumstance that a factfinder may consider as tending to prove guilt.").

¶ 26    Officer Marciano, whom the trial court found credible, testified that, as he pursued the defendant, he saw the defendant drop a pistol while jumping over a gate and pick the pistol back up, demonstrating the defendant's possession of the firearm. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant.").

¶ 27    Further, Officer Marciano thought he saw the defendant drop the firearm in a gangway at 7618 South Cornell Avenue. He then continued to pursue the defendant until he detained him in an alley behind a house. Officer Marciano informed the other officers that he saw a firearm and directed them to retrace his steps to the area around 7618 South Cornell Avenue to find it. Searching that area of the pursuit, Officer Healy recovered a magazine containing live rounds in the gangway at 7614 South Cornell Avenue, north of 7618 South Cornell Avenue. Officer Marciano recovered a semi-automatic pistol 20 feet away, in the backyard at that same address. The magazine fit the pistol.

¶ 28    The officers' testimony was corroborated by the video evidence, in which a man running from the officers can be seen crouching down in a gangway before running through it and into a yard.[2] As Officer Marciano chased the man through the gangway into a yard, a firearm can be seen in the neighboring backyard. Officer Marciano tackles the man, who turned out to be the defendant,

---

[2]The defendant does not dispute the admissibility or authenticity of the body camera footage entered into evidence by the State.

and tells other officers to check at 7618 South Cornell Avenue. In the footage, Officer Marciano ultimately recovers the firearm from 7614 South Cornell Avenue.

¶ 29    Based on this evidence, a rational trier of fact could have found that the defendant possessed a firearm where Officer Marciano saw him drop a firearm, pick it up, continue to run, and then drop it again. Notably, after arresting the defendant, Officer Marciano recovered a firearm in the same area that he had been pursuing the defendant and thought he saw the defendant drop a firearm. See *Balark*, 2019 IL App (1st) 171626, ¶ 95 (evidence showed the defendant possessed a firearm, where an officer testified that he observed the defendant place a firearm in a glove compartment, and the firearm was subsequently recovered from the compartment); *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 33 (evidence established the defendant possessed a firearm, where he fled from police, was secured to the ground, and a firearm was found two or three feet from him).

¶ 30    The defendant nevertheless asserts that the only evidence against him was the testimony of Officer Marciano, who was contradicted by the "circumstances" and the defendant's testimony. However, the testimony of a single, credible witness is sufficient to sustain a defendant's conviction even if contradicted by the defendant. *People v. Harris*, 2018 IL 121932, ¶ 27. The trial court here ultimately found Officers Healy and Marciano to be credible, and rejected the defendant's alternative explanation that he fled from the police because he had been in a fight at a Walmart. As already mentioned, it was the trial court's role as the trier of fact to make credibility determinations, and we will not substitute our judgment for those determinations. *Williams*, 193 Ill. 2d at 338. The State was also not required to submit direct physical evidence, such as DNA or fingerprint evidence, connecting the defendant to the firearm and ammunition, as the defendant

suggests on appeal. *People v. Moore*, 2016 IL App (1st) 133814, ¶ 56 (because a single credible witness is sufficient to sustain conviction, the State need not present corroborating physical evidence); *People v. Fleming*, 2013 IL App (1st) 120386, ¶ 74 (circumstantial evidence is sufficient to sustain a criminal conviction).

¶ 31 The defendant also claims he could not have possessed the firearm because the police officers did not see a firearm in the pocket of his shorts when he initially exited the vehicle. The defendant maintains that because he was only wearing shorts, and no shirt, any firearm he possessed would have been visible. However, the video evidence in the record on appeal reflects that the defendant was wearing multiple layers underneath his shorts, and his shorts also exhibited large pockets down the sides. The trier of fact could have reasonably inferred that the defendant was able to successfully conceal the firearm using the attire he wore that day. Construing the evidence in the light most favorable to the State, as we must, we find that the evidence was sufficient to sustain defendant's conviction for AUUW. *Cooper*, 194 Ill. 2d at 430-31. We accordingly affirm the trial court's judgment.

¶ 32 CONCLUSION

¶ 33 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34 Affirmed.