2022 IL App (1st) 201286-U

No. 1-20-1286

Order filed June 30, 2022

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 7311 |
| | ) | |
| KINGSOLOMON STOCKSTILL, | ) | Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Defendant's conviction of aggravated unlawful use of a weapon is affirmed, where the evidence showed defendant possessed the firearm that was recovered in a yard he ran through while fleeing from police officers.

¶ 2  Following a bench trial, defendant Kingsolomon Stockstill was found guilty of two counts of aggravated unlawful use of a weapon (AUUW) and two counts of unlawful use or possession of a weapon by a felon (UUWF). The trial court sentenced him to three years' imprisonment for AUUW. On appeal, defendant alleges the State failed to prove him guilty beyond a reasonable

doubt of AUUW, arguing the body-worn camera video evidence did not corroborate the testimony of the State's witness that he possessed a firearm. We affirm.

¶ 3    Defendant was charged by indictment with six counts of AUUW and two counts of UUWF, premised on an incident in Chicago on April 27, 2019. The State proceeded to trial on two counts of AUUW, premised on his possession of an uncased, unloaded, and immediately accessible handgun without a concealed carry license (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2018)) and possession of a handgun without a valid Firearm Owners Identification card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2018)), and both counts of UUWF (720 ILCS 5/24-1.1(a) (West 2018)). The State nol-prossed the remaining counts.

¶ 4    At trial, Chicago police officer Alfredo Martinez testified that on April 27, 2019, at about 11:54 p.m., he and his partner Officer Angel Gutierrez were on patrol in an unmarked vehicle driven by Gutierrez. While driving southbound on the 12300 block of South Sangamon Street, they observed a vehicle fail to come to a complete stop at a stop sign. They curbed the vehicle around the 12200 block of South Sangamon Street. After doing so, defendant, whom Martinez later identified in court, exited the passenger side of the vehicle and fled on foot.

¶ 5    Martinez pursued defendant on foot while Gutierrez drove his vehicle around the block to cut defendant off at an alley. Defendant ran north and into the backyard of a residence, which was "well lit from the light in the alley." From about 10 feet away, Martinez observed defendant "reach into [the] right side of his waistband with his right hand and retrieve a handgun and thr[o]w it." The "black, dark" handgun landed "[j]ust south" of the corner of a garage in that backyard. Martinez pursued defendant as he ran and jumped over a fence to the north. Martinez then took defendant down to the ground before he could jump over another fence. Gutierrez arrived on scene

and assisted in arresting defendant. One or two minutes after Martinez saw defendant throw the handgun, Martinez directed Gutierrez to the location of the handgun in the next yard, and Gutierrez recovered it. Martinez did not see anyone else enter the yard within those one or two minutes.

¶ 6 The State published video footage recorded by Martinez's body-worn camera for the court, without objection, and Martinez confirmed the footage depicted his pursuit of defendant. We have reviewed the video, which is included in the record. Throughout the recorded foot pursuit, the camera shakes in different directions, rendering the recording of the pursuit mostly blurry, except for a few isolated moments.

¶ 7 From what is visible, the video shows, in relevant part, Martinez running down the sidewalk of a residential neighborhood in pursuit of defendant. He eventually turns right and enters a gangway between two houses, passing through a fence into a brightly lit yard. The yard includes an open space in the center with a garage on the left side and a garage on the right side in a neighboring yard. Defendant runs toward the back of the yard where red and blue lights become visible. Defendant then turns around and runs toward Martinez along the wall of the left garage. Defendant is silhouetted by the bright lights behind him creating a shadow image of him. Defendant turns to the left of Martinez around the corner of the garage, which is almost completely obscured by shadows. Martinez follows him. Defendant jumps a chain-link fence, runs across another yard, and attempts to jump over another fence when Martinez grabs him, pulls him down to the ground, and restrains him.

¶ 8 On cross-examination, Martinez testified that he did not see any indication defendant had a firearm when defendant exited the vehicle and began fleeing. Defendant was running toward Martinez when he saw defendant first pull out the handgun in the yard. Martinez confirmed that this "time frame" was "captured" in the video. Martinez acknowledged that viewing the video at

"live speed," defendant could not be seen removing anything from his waistband, but Martinez was "not sure if you slow[ed] it down." He testified that he observed defendant's actions "through [his] eyes." Martinez did not observe the gun land on the ground and the "only time [he] observed the gun next to the garage was when [Gutierrez] was recovering it." He had not looked at that area of the yard by the garage prior to Gutierrez recovering the gun. Martinez did not know the make and model of the gun, but could tell it was a semi-automatic weapon. Police found 46 grams of cannabis on defendant at the police station.

¶ 9    Gutierrez testified consistently with Martinez that they stopped a vehicle while on patrol, Martinez chased defendant, and Gutierrez drove around to cut defendant off in an alley. He likewise testified consistently that he assisted in arresting defendant, and Martinez directed him toward a yard where he recovered a firearm. Gutierrez added that the recovered firearm was a semiautomatic 9-millimeter handgun, and it was found in a residential, "typical Chicago backyard" with "[j]ust snow" around it. The handgun contained multiple rounds of live ammunition. Gutierrez took the handgun and ammunition back to the police station, and the items were inventoried.

¶ 10    The State published Gutierrez's body worn camera video footage for the court without objection. We have also reviewed the video, which is included in the record. The video shows, in relevant part, Gutierrez and another officer circling the open space in the center of the backyard with flashlights. The other officer examines the ground near the left garage. Gutierrez walks from the left garage toward the right garage. About 30 seconds into the video, Gutierrez stops at the open grassy space closer to the right garage, puts on gloves, and focuses the camera on a black handgun resting on top of light snow on the grass. No snow or debris is visible on top of the handgun. Gutierrez picks up the handgun and walks away.

¶ 11    On cross-examination, Gutierrez testified he used a flashlight to search the area because it was dark outside. He searched "one general area" of the yard but did not look around the entire yard. Gutierrez located and recovered the handgun on the grass about five feet from the garage. He and another officer searched the general area near the garage for about 30 seconds before locating the gun.

¶ 12    The State presented a stipulation between the parties that on April 27, 2019, defendant did not have a valid Firearm Owners Identification (FOID) card or concealed carry license. It was also stipulated that he had a previous conviction for possession of a controlled substance.

¶ 13    The trial court found defendant guilty of both counts of AUUW and both counts of UUWF. The court stated it was "at a disadvantage" because there was "a lot of shaking" in Martinez's body-worn camera footage, but "Martinez's testimony was uncontradicted." Martinez saw defendant run toward the alley, turn, and run back toward him when defendant "took the gun out." The court noted that, based on the video evidence, the area of the incident was "well lit," and the only place that was not "lit up brightly" was the point where defendant approached Martinez and discarded the firearm. The court explained that particular dark spot was "probably a shadow from the garage." The court also found that the video evidence corroborated Gutierrez's testimony that the handgun was five feet from the garage. The court noted the video showed there was snow on the ground at the scene, but the handgun was laying on top of the "pristine" snow with no debris on it.

¶ 14    The court merged defendant's counts into one count of AUUW premised on his lack of a concealed carry license and sentenced defendant to three years' imprisonment. Defendant timely appealed.

¶ 15    On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt of AUUW because Officer Martinez's testimony that he possessed a gun was not corroborated by the video evidence published at trial.

¶ 16    When reviewing the sufficiency of the evidence at trial, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. Rather, it is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000).

¶ 17    The trier of fact need not "disregard inferences which flow normally from the evidence before it," or "search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 18    To sustain the conviction for AUUW, the State was required to prove defendant did not have a valid concealed carry license and carried a handgun on or about his person when not "on his *** land or in his *** abode, legal dwelling, or fixed place of business," and the possessed

handgun was "uncased, unloaded, and immediately accessible at the time of the offense." 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2018). Defendant does not dispute that he did not have a concealed carry license, as the parties stipulated to that fact at trial. Rather, defendant argues that the evidence did not establish he possessed a handgun.

¶ 19    Generally, possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession, which is at issue in this case, "is the exercise by the defendant of present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material." *Id.* The State may prove actual possession through testimony showing the defendant "exercised some form of dominion over the weapon, such as trying to conceal it or throwing it away." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94. Whether there is possession or control raises a question of fact to be determined by the trier of fact, here, the trial judge. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000).

¶ 20    In this case, the evidence was sufficient for a rational trier of fact to find defendant guilty of AUUW beyond a reasonable doubt. The evidence shows that after Officers Martinez and Gutierrez curbed the vehicle defendant was in, he exited the vehicle, and fled on foot. Martinez pursued defendant on foot, and observed him remove a handgun from his waistband and toss it away from him as he ran through a residential yard. Martinez instructed Gutierrez to recover the discarded handgun, describing the general area of its location in the yard. Gutierrez recovered a handgun from the ground within 30 seconds near a garage in the general area described by Martinez. The trial court found Martinez's testimony "uncontradicted." The testimony of Martinez, who saw defendant discard a handgun while fleeing and did not see anyone else enter the yard, was sufficient by itself to establish that defendant possessed a handgun. See *People v.*

*Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict."). Gutierrez's recovery of a handgun seconds later, in the area where Martinez saw defendant discard a handgun, bolsters that conclusion.

¶ 21    Video footage from the officers' body-worn cameras supports the officers' version of events. In Martinez's body-worn camera footage, he is seen chasing defendant, who at one point turns around and runs toward Martinez through a yard. Gutierrez's body-worn camera shows him picking up a handgun from the ground in the same yard defendant ran through. Although light snow is seen on the grass in the area where the gun was recovered, no snow or debris appears on the gun. It is a reasonable inference that the gun was recently on the ground given the absence of any snow or debris on top of it. *People v. Swenson*, 2020 IL 124688, ¶ 35 ("[a]ll reasonable inferences are drawn in favor of a finding of guilt" when assessing the sufficiency of the evidence).

¶ 22    The trial court drew this same conclusion from the evidence. It found that the handgun was recovered from an area where the snow was "pristine," and the handgun had "no debris" on it "at all." Construing the totality of this evidence in the light most favorable to the State, as we must, we find a rational trier of fact could have found defendant actually possessed, and then discarded, the handgun that was found in the yard he ran through. *Cooper*, 194 Ill. 2d at 430-31.

¶ 23    Defendant argues that the body-worn camera video footage does not corroborate, but rather calls into question, the credibility of Martinez's testimony because nothing captured in the video shows defendant removing a gun from his waistband and throwing it in the yard near a garage. The State was not required to introduce additional evidence to corroborate the observations of Martinez, a testifying police officer. See *People v. Little*, 322 Ill. App. 3d 607, 618 (2001).

¶ 24    Further, the video does not rebut Martinez's testimony. Although defendant's discarding the handgun is not visible in Martinez's video, the video shows defendant turning around and

running toward Martinez, exactly as Martinez testified that defendant did before discarding the handgun. Defendant then runs into a shadow, obscuring his actions in Martinez's video. However, the video footage from Gutierrez's body-worn camera shows Gutierrez recovering a handgun from the yard where defendant was seen running. That defendant's actions are not visible on Martinez's video does not mean they did not occur. The trial court, as the trier of fact, was not required to "search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 25    Nor, as defendant suggests, was the State required to present the physical gun or direct evidence linking him to the gun. See *People v. Williams*, 182 Ill. 2d 171, 192 (1998) (circumstantial evidence is sufficient, and "[p]roof of physical evidence connecting a defendant to a crime has never been required to establish guilt"). It was the role of the trial court, and not this court, to draw reasonable inferences from the evidence, determine the credibility of witnesses, and assess the weight of the evidence. *Williams*, 193 Ill. 2d at 338. The trial court's finding that defendant unlawfully possessed the firearm that was recovered from the yard that he ran through was not "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL 118674, ¶ 12. Therefore, the evidence was sufficient to prove defendant guilty of AUUW beyond a reasonable doubt.

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 27    Affirmed.