2025 IL App (1st) 240793-U
No. 1-24-0793
Order filed March 20, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 17467 |
| | ) | |
| ANDRE STRONG, | ) | Honorable |
| | ) | Tiana Blakely, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for reckless discharge of a firearm where the evidence was sufficient to establish that he was not justified in his use of force beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Andre Strong was found guilty of reckless discharge of a firearm and sentenced to 24 months' probation. On appeal, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he was not justified in his use of force. We affirm.

¶ 3    Defendant was charged by indictment with three counts of aggravated discharge of a firearm alleging that he knowingly discharged a firearm in the direction of Jordan Brown and

Jorian Brown (720 ILCS 5/24-1.2(a)(2) (West 2018)), two counts of aggravated assault alleging that he knowingly engaged in conduct which placed both Jordan and Jorian in reasonable apprehension of receiving a battery by discharging a firearm (720 ILCS 5/12-2(c)(2) (West 2018)), and two counts of reckless discharge of a firearm alleging that he discharged a firearm in a reckless manner endangering Jordan and Jorian (720 ILCS 5/24-1.5(a) (West 2018)).[1]

¶ 4        Prior to trial, the State dismissed a count of aggravated discharge of a firearm as to Jorian.

¶ 5        Jordan testified that on November 22, 2018, at approximately 9:30 p.m., he was driving home from an errand with his sister, Jorian. Another vehicle was "tailing [him] very closely" and eventually "rammed" his vehicle. Jordan exited his vehicle to assess the damage. The driver of the other vehicle, whom Jordan identified in court as defendant, also exited his vehicle and pointed a "black, semiautomatic handgun" at Jordan. The State entered into evidence a firearm which Jordan identified as defendant's handgun.[2] Defendant then walked toward Jordan and "fired about two shots" in Jordan's direction. Jorian screamed. Jordan was not struck by a bullet, but he noticed "a lot" of smoke coming from his vehicle.

¶ 6        Jordan did not say anything to defendant prior to defendant firing the gun, but defendant was "frantically screaming and cursing" at Jordan. Jordan never placed his hands in his pockets, never walked toward defendant, and was unarmed. The interaction lasted 5 to 10 minutes before defendant "took off." Jordan attempted to trail defendant in order to view his license plate, but Jordan's vehicle began "having issues" due to the bullet that hit the vehicle.

---

[1] As Jordan Brown and Jorian Brown share a last name, we refer to them by their first names.

[2] No exhibits were included in the record on appeal. The descriptions of the exhibits are based on the transcripts provided.

¶ 7      Jordan, Jorian, and their father located defendant's vehicle at a home on the 6300 block of Patricia Drive in Matteson, Illinois (defendant's residence), a few blocks away from the scene, and they notified police. Officer Bates responded, and he and Jordan went back to the scene of the incident.[3] Bates walked the scene and took photographs. The State entered into evidence the photographs depicting debris and puddles of fluid left at the scene. Bates and Jordan returned to defendant's residence, and Jordan indicated to Bates that defendant shot at him.

¶ 8      The State entered into evidence the radiator from Jordan's vehicle, which he described as having bullet fragments lodged in it. The State also entered into evidence a bullet fragment that Jordan described as having been stuck in his radiator.

¶ 9      On cross-examination, Jordan stated that he was unable to walk to the rear of his vehicle to assess the damage because defendant began shooting at him and he froze. The puddle of liquid at the scene was antifreeze from Jordan's radiator. The police removed the bullet fragments from the radiator. Defense counsel showed Jordan a photograph of a single shell casing found at the scene. He did not recall seeing a second shell casing.

¶ 10      On redirect examination, Jordan testified that Jorian was in the passenger seat of his vehicle when defendant fired the gun, and she never exited the vehicle.

¶ 11      Jorian testified that on November 22, 2018, she and Jordan were returning home from an errand when defendant began following them. Jordan drove around their subdivision because he did not want defendant following them to their home. Jordan was not driving erratically. Defendant's vehicle eventually rammed into their vehicle. She stayed in the vehicle, while Jordan

_____

[3] Officer Bates's first name does not appear in the record on appeal.

left to assess the damage. When defendant was not far from Jordan, she heard two gunshots and was terrified.

¶ 12 She heard a "little bit of an argument" between Jordan and defendant, but she could not hear what they were saying. Jordan reentered the vehicle and moved it closer to the curb, and defendant sped off. During the incident, Jordan was not armed with a firearm and he did not threaten defendant.

¶ 13 After they returned home, Jorian, Jordan, and their parents located defendant's vehicle at defendant's residence. Defendant was moving his vehicle into the garage.

¶ 14 On cross-examination, Jorian testified that she did not know where Jordan's hands were when he attempted to walk toward the back of the vehicle.

¶ 15 Matteson police officer Jeremy Sims testified that on November 22, 2018, at approximately 11:25 p.m., he and another officer interviewed defendant at the police station. After waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant stated that he had been celebrating Thanksgiving at his home when he learned that a wallet belonging to his son's friend, who had been at the home, had been stolen from the friend's vehicle. Defendant immediately went to his automobile and observed a vehicle that he assumed was involved in the theft. Defendant then followed that vehicle. The driver eventually slammed on the brakes and defendant rear-ended the vehicle. Defendant was scared and fled. He hid his automobile in his garage. Defendant never stated that he exited his automobile or that a firearm was involved.

¶ 16 Pursuant to search warrants for defendant's vehicle and residence, a 9-millimeter handgun was recovered from the garage. Sims re-interviewed defendant on November 23, 2018, around 3:45 a.m. and informed defendant that police had recovered the firearm.

¶ 17    Defendant then told police that when he rear-ended the other vehicle, the driver of that vehicle exited and had his hand in his pocket. Defendant did not see the other driver with a firearm. Defendant then fired one shot at the ground and told the other driver to "get back." Then, defendant entered his vehicle and drove off. Defendant knew police were looking for him, so he hid his vehicle and the firearm in the garage. Defendant mentioned that there was a passenger in his vehicle, but he did not identify the passenger. Defendant's statement was typed, and he reviewed and signed it.

¶ 18    On cross-examination, after being shown a copy of the search warrant, Sims testified that the recovered firearm had six rounds in the magazine and one in the chamber.

¶ 19    Matteson police detective Shawn White testified that on November 22, 2018, he executed a search warrant at defendant's residence. White recovered a 9-millimeter handgun wrapped in a cloth bag inside the garage. The parties stipulated that the firearm entered into evidence previously was the firearm recovered from the garage.

¶ 20    White interviewed defendant at the station on November 23, 2018, at approximately 10 a.m., where defendant waived his *Miranda* rights and gave another statement. After the court entered defendant's statement into evidence, White read it into the record.

¶ 21    According to the statement, defendant was celebrating Thanksgiving at his home when his son informed him that his wallet had been stolen from his son's friend's vehicle. Defendant entered his vehicle and went looking for the individual who took the wallet. He began following a vehicle. That vehicle eventually stopped, causing defendant to rear-end it. Defendant and the other driver both exited their vehicles. The other driver had his hands in his pockets. Defendant did not see a weapon, but reacted by drawing his firearm and shooting at the ground. Defendant told the other

driver to "get back" and asked him why he broke into defendant's garage. When the other driver denied this, defendant realized he had the wrong person, panicked, and drove home, parking his vehicle in the garage and hiding the firearm. Defendant said he knew it was "wrong" and he should have "never reacted the way he did." Defendant reviewed and signed this statement.

¶ 22    On cross-examination, White testified that a member of the Brown family brought a radiator into the station in May 2023. To White's knowledge, there were no reports of anyone examining the radiator or about the bullet fragments found in the radiator.

¶ 23    The parties stipulated that Officer Bates recovered a 9-millimeter spent shell casing on the ground near a pool of antifreeze at the scene. The parties also stipulated that forensic scientist Brian Parr received "one Ruger Model LC9S semiautomatic pistol, one magazine, seven live Hornady 9mm Luger cartridges, [and] one spent Hornady 9mm Luger cartridge case *** in a sealed condition." He compared a spent casing fired from a test shot from the pistol with a casing recovered from the scene and determined to a "reasonable degree of scientific certainty" that the casings were from the same firearm.

¶ 24    The trial court granted the defense motion for a directed finding on one count of aggravated discharge of a firearm as to Jorian, ruling that no evidence established that defendant knew Jorian was in the vehicle or that defendant fired shots at the vehicle.

¶ 25    Defendant testified that on November 22, 2018, he was hosting Thanksgiving dinner at his home. Defendant's son informed him that someone broke into his friend's vehicle and his friends were chasing the suspect. Defendant entered his vehicle to look for the suspect. He saw Jordan's vehicle that "looked kind of strange" and followed it in order to view the license plate or call the police.

¶ 26    Jordan was driving fast and eventually slammed on his brakes. Defendant tried to avoid a collision but struck Jordan's back bumper, and both vehicles stopped. He and Jordan exited their vehicles. Defendant thought Jordan was reaching for something, but he saw Jordan's hands and that Jordan did not have a weapon. Defendant did not draw his firearm at this time. He and Jordan were talking and walking toward each other. Jordan placed his hands in his pockets, and defendant thought he was reaching for a firearm. Defendant was scared, "worried for [his] life," and drew his firearm. Then, as he was instructed in a concealed carry class, he fired at the ground and told Jordan to stop.

¶ 27    Jordan raised his hands and defendant did not see a weapon. He put his firearm back in his waistband and told Jordan to pull over so they could exchange information. However, he "panicked" because he had never fired his weapon outside and went home. He did not intend to harm anyone.

¶ 28    On cross-examination, defendant stated that he and Jordan were conversing when they exited their vehicles and no one was yelling. He shot at the ground, not at Jordan. Defendant did not call 911 after the incident. He parked his vehicle in his garage because he did not know Jordan and did not want Jordan to know where he lived. He did not recall telling police that he concealed his vehicle in his garage because he was aware that police were looking for him. He did not review his statement thoroughly, but he signed it.

¶ 29    Ramon Crawford testified that he had known defendant since childhood and that defendant had a reputation for truthfulness and peacefulness.

¶ 30    Easton Baker testified that he was at defendant's home on November 22, 2018. He witnessed an individual breaking into the vehicle of his friend, Noah Walker, and rummaging

through the passenger's side, which had Baker's personal belongings. Walker yelled for the individual to leave the vehicle. The individual fled, and Baker and Walker chased the individual until they reached an alley. They returned to defendant's home and witnessed defendant being arrested.

¶ 31    On cross-examination, Baker testified that he was not in the vehicle with defendant during the incident nor did he inform defendant that someone had broken into the vehicle.

¶ 32    David Lombardo, a certified firearms safety instructor, testified that he was hired to consult in defendant's case. Lombardo concluded that the firearm could have only been fired one time because the firearm had seven live rounds and "one extended [*sic*] shell casing" was found at the scene.

¶ 33    On cross-examination, Lombardo testified that he had never instructed his students to fire a warning shot if they felt threatened because he advised his students that "every time [they] pull the trigger, [they're] using lethal force." It was accepted in his field that firearm carriers were instructed not to fire warning shots. Lombardo also testified that someone unfamiliar with firearms could mistake the sound of a bullet striking something else as another gunshot.

¶ 34    On redirect examination, Lombardo stated that a bullet could ricochet off the ground and come back up under a vehicle.

¶ 35    Defendant was found guilty of the remaining count of aggravated discharge of a firearm as to Jordan, aggravated assault as to Jordan, and both counts of reckless discharge of a firearm as to Jordan and Jorian. He was found not guilty of aggravated assault as to Jorian. In ruling, the trial court found that Jordan testified credibly. The court did not believe that Jordan threatened defendant with unlawful force, that defendant's actions were reasonable, or that his use of force

was necessary. The court stated that defendant was the initial aggressor. Additionally, defendant's actions of hiding his vehicle and failing to tell the police the truth were not actions of someone acting in self-defense.

¶ 36    Defense counsel filed a motion to reconsider. During the hearing on the motion, counsel argued that Jordan's testimony was contradicted by the evidence that defendant shot at the ground and therefore could not have been pointing the firearm at Jordan. Defense counsel further argued that the findings that defendant was guilty of both aggravated discharge of a firearm and reckless discharge of a firearm were inconsistent, as the charges required different mental states that negated one another.

¶ 37    The court agreed that the findings were inconsistent and reversed its findings of guilty for aggravated discharge of a firearm and aggravated assault as to Jordan. The court amended its judgment to findings of guilty only on both counts of reckless discharge of a firearm as to Jordan and Jorian.

¶ 38    The court sentenced defendant to 24 months' probation, 10 days of Sheriff's Work Alternative Program, and anger management counseling.

¶ 39    On appeal, defendant challenges the sufficiency of the evidence establishing that he did not have a reasonable belief that his use of force was justified.

¶ 40    In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566,

¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact with respect to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 41 The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 42 In order to prove defendant guilty of reckless discharge of a firearm, the State needed to prove that defendant "discharg[ed] a firearm in a reckless manner which endanger[ed] the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2018); see also *People v. Cunningham*, 2019 IL App (1st) 160709, ¶ 27.

¶ 43 Defendant does not dispute that the State proved the elements of reckless discharge of a firearm. Rather, he alleges that the State failed to prove beyond a reasonable doubt that he did not act in self-defense or that his use of force was not justified.

¶ 44 When a defendant presents some evidence of self-defense, "the burden of disproving the existence of justification beyond a reasonable doubt passes to the State." (Internal quotation marks omitted.) *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 50. The elements of self-defense include

"(1) the threat of unlawful force against defendant; (2) an imminent danger of harm; (3) an aggressor other than defendant; (4) the belief by defendant that danger existed and to avert danger, the kind of force used was necessary; and (5) the belief was reasonable." (Internal quotation marks omitted.) *Id.* ¶ 55. Deadly force may only be used where the threatened force will cause death or great bodily harm or the force threatened is a forcible felony. *Id.* ¶ 52. The State meets its burden in proving a defendant did not act in self-defense when the trier of fact determines that it has negated any of the elements. *People v. Rodriguez*, 258 Ill. App. 3d 579, 583 (1994).

¶ 45 At trial, the State presented Jordan and Jorian, who testified that defendant chased them in his vehicle, rear-ended them, exited his vehicle, drew a firearm, fired a shot that hit Jordan's vehicle while Jorian was inside, and fled. Jordan stated that he never placed his hands in his pockets and both Jordan and Jorian stated that Jordan was unarmed. Officers testified that defendant did not initially reveal to them that he fired a weapon. They also stated that defendant told them that he hid his vehicle and firearm in his garage because he knew police were looking for him. Defendant testified that he followed Jordan's vehicle, thought Jordan was reaching for a firearm when he placed his hands in his pockets, feared for his life, fired a shot at the ground, never saw Jordan with a weapon, and did not initially inform the police that he fired a weapon or felt his life was threatened. He admitted to signing a statement where he stated that he knew his actions were wrong.

¶ 46 Viewing the evidence in the light most favorable to the State, the trial court could have found that defendant did not act in self-defense. The trial court found that all elements of defendant's self-defense claim were negated by the evidence presented. In its ruling, the court noted that Jordan testified credibly and did not present defendant with a threat of force. Although

defendant testified that he fired the shot because he feared for his life, the trial court need not accept as true defendant's version of events and must instead weigh defendant's testimony against that of the other witnesses. *People v. Murillo*, 225 Ill. App. 3d 286, 292 (1992). Here, the court found Jordan was credible in recounting the events of that day, a conclusion we will not second-guess. See *Siguenza-Brito*, 235 Ill. 2d at 224-25 (2009).

¶ 47    The court also found that defendant was the initial aggressor and that his actions were neither necessary nor reasonable given the circumstances. The evidence established that defendant chased Jordan's vehicle, got into a collision, and fired a weapon that could have harmed Jordan or Jorian, and in fact hit the vehicle while Jorian was inside. The evidence did not establish that Jordan was armed at the time. As defendant satisfied none of the elements of self-defense, construing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found that defendant's actions were not justified and were reckless. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution).

¶ 48    Nevertheless, defendant contends that shooting at the ground was justified as he believed Jordan was reaching for a weapon when he placed his hands in his pockets.

¶ 49    As stated, the court found that Jordan testified credibly when he stated he did not have a weapon that day and did not place his hands in his pockets. Defendant himself testified that he never saw Jordan with a weapon and Jordan did not have a weapon in his hands when he raised them after defendant fired a shot. Moreover, the court found it telling that defendant hid his vehicle and failed to initially tell police the truth of what happened when questioned. Fleeing the scene, attempting to avoid police, and hiding a weapon show consciousness of guilt and provide

circumstantial evidence that negates self-defense, as the court found here. See *People v. Brown*, 2012 IL App (2d) 110640, ¶ 19; see also *Harmon*, 2015 IL App (1st) 122345, ¶ 59. The trier of fact is not required to "disregard inferences that flow normally from the evidence before it," and it is a reasonable inference that defendant's actions that day were not those of a man acting in self-defense. See *Jackson*, 2020 IL 124112, ¶ 70.

¶ 50     Construing all the evidence and reasonable inferences therefrom in the light most favorable to the State, we find that the evidence was sufficient to find that defendant was not justified in his use of force, and his conviction for reckless discharge of a firearm was not "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL 118674, ¶ 12.

¶ 51     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 52     Affirmed.